UNITED STATES of America,
Plaintiff-Appellee,

v.

Clyde P. WILLIS, Jr., Robert H. Love
and Christopher R. Pieser,
Defendants-Appellants.

No. 79–5621.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 19, 1981.

Rehearing and Rehearing En Banc
Denied May 28, 1981.

Louis B. Merhige, New Orleans, La., Andrew C. Pavlick, Miami, Fla., for defendants-appellants.

John P. Volz, U. S. Atty., Ronald A. Fonseca, Robert J. Boitmann, Asst. U. S. Attys., Orleans, La., for plaintiff-appellee.

Before WISDOM, GARZA and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Clyde P. Willis, Jr., Robert H. Love, and Christopher R. Pieser were convicted of conspiracy to import marijuana into the United States and conspiracy to possess marijuana with intent to distribute. On appeal these defendants argue that (1) the Coast Guard illegally seized and searched their boat, (2) the trial court should have granted their motion for a directed verdict because of insufficient evidence that the defendants knew the boat carried marijuana, and (3) the trial court should have granted a mistrial because a government witness testified that the defendants' ship was on a Coast Guard "suspect vessel" list. We affirm the conviction of the captain of the boat but reverse the conviction of the two crewmen.

For reasons that are not part of this record, the Coast Guard had the shrimping boat SEAMAN BLUES on a list of vessels suspected of trafficking in marijuana. The Coast Guard sighted the SEAMAN BLUES about 1:00 p. m. on June 19, 1979, when the ship was in the Gulf of Mexico, approximately 100 miles from the Louisiana coast. The Coast Guard continued surveillance of the SEAMAN BLUES by plane until shortly before 1:00 a. m. on June 20, when the Coast Guard cutter POINT SAL intercepted and boarded the SEAMAN BLUES about 43 miles from the coast, under the authority of 14 U.S.C. § 89(a) authorizing general safety and documentation inspec-

tions.[1] Defendant Willis identified himself as the captain of the vessel. The boarding party asked Willis and another crew member to open the fish-hold so that it could be inspected for illegal fish, pursuant to 16 U.S.C. § 971f,[2] and so that the vessel's official number could be verified from its required marking on the main beam, pursuant to 46 C.F.R. § 69.05–1.[3] Approximately seventeen tons of marijuana were in the hold. Willis and the two crew members, Love and Pieser, were placed under arrest, and the boat was taken to Louisiana. The U.S. District Court for the Eastern District of Louisiana rejected the defendants' motion to suppress the marijuana as illegally seized. *United States v. Willis*, 476 F.Supp. 201 (E.D.La.1979). The defendants were convicted on a two-count indictment of conspiracy to import marijuana into the United States and of conspiracy to possess marijuana with intent to distribute. 21 U.S.C. §§ 846 & 963.

## I.

The defendants first raise the issue of the trial court's refusal to suppress the marijuana seized by the Coast Guard. The district court opinion fully discussed all the points raised, and we are in complete agreement with that court's analysis. The district court correctly held that this court's *en banc* decision in *United States v. Warren*, 578 F.2d 1058, 1064–66 (5th Cir. 1978) (*en banc*), later confirmed in *United States v. Williams*, 617 F.2d 1063, 1075, 1085–86 (5th Cir. 1980) (*en banc*), disposed of this issue. The Coast Guard had authority to enter the ship's fish-hold under 14 U.S.C. § 89(a), 16 U.S.C. § 971f, and 46 C.F.R. § 69.05–1.[4] The defendants cannot have any reasonable expectation of privacy protected by the Fourth Amendment in an area where the Coast Guard has authority to go, regardless of the subjective expectations or intent of the boarding party. *United States v. DeWeese*, 632 F.2d 1267, 1269–71 (5th Cir. 1980). It is likewise immaterial that Willis initially showed the boarding party papers indicating that a documentation and safety inspection had been performed on the SEAMAN BLUES about four months earlier. The statutes authorizing such inspections place no limits on their frequency.

## II.

The defendants next argue that the trial court erred in not directing a judgment of

---

1. The statute provides that the Coast Guard may
   > make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

   14 U.S.C. § 89(a).

2. "(a) Any person authorized in accordance with the provisions of this chapter to enforce the provisions of this chapter and the regulations issued thereunder may—
   (1) with or without a warrant, board any vessel subject to the jurisdiction of the United States and inspect such vessel and its catch . . . ."

16 U.S.C. § 971f.

3. § 69.05–1 Marking net tonnage and official number on vessel.
   (a) The official number of a vessel preceded by the abbreviation "No.", and the net tonnage, preceded by the word "NET", shall be marked in a conspicuous place on her main beam at the expense of the owner or master, in Arabic numerals of the block type at least 3 inches in height, when the size of the main beam will permit. If the main beam is wood, it shall be carved or branded in figures not less than three-eights [sic] of an inch in depth. If the main beam is of iron or other metal, the official number and net tonnage shall be outlined by punch marks and painted over with oil paint in a light color on a dark background or a dark color on a light background.

   46 C.F.R. § 69.05–1.

4. *See* nn. 1–3 above.

acquittal because the government failed to prove that the defendants knew the nature of the cargo or entered into any agreement to import it or distribute it.

■ It is elemental that in order to prove a criminal conspiracy the government must present direct or circumstantial evidence of an agreement among the conspirators to commit the offense. Circumstantial evidence may support a jury's findings, but there must still be proof beyond a reasonable doubt that the conspiracy existed, that the accused knew of it, and that he intended to join or associate himself with its objectives. *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.) (*en banc*), *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979).

■ Our reading of this record leads us to believe that the government entirely ignored these longstanding requirements of the proof of criminal conspiracy. During the trial, the government never offered any evidence to support an inference that the two crew members knew that the hold contained marijuana—other than the evidence of their mere presence on the boat. In fact, the government never even addressed an argument to this issue. The evidence before the jury was that the hold was closed and that no odor of marijuana was detected outside the hold. Contrary evidence was available to the government: at a pre-trial hearing to suppress the seized marijuana, Coast Guardsman Joel Hoi testified that he smelled marijuana aboard the ship. But the government never bothered to bring this testimony before the jury. The omitted testimony shows that the government might have made a case against the crew members. Nevertheless, if guilty people are escaping justice, it is not for the court to rewrite the record in order to escape misdirected criticism.

To demonstrate further that the government's case was not impossible, we list these additional sources of evidence, besides Joel Hoi's testimony, ignored by the government:

(1) Whether the ship's log, showing great nervousness about Coast Guard surveillance, was written in the hand of either crew member;

(2) Whether any third party observed the time and circumstances of the departure of the SEAMAN BLUES from its home port, including Love and Pieser's presence aboard the ship and their conduct;

(3) Whether the leak in the hold reported to the Coast Guard by Captain Willis was of a kind that would require the opening of the hold and the exposure of the crew to its contents; and

(4) Whether practices in the fishing industry were such that any crew member hired for a non-fishing voyage at that time of year and in those waters would at least suspect he was involved in a drug-smuggling operation.

These illustrate evidentiary leads that might have given the relatively slight indications of guilty attitude or conduct on the crew's part that have been held to support a conviction for conspiracy. *See, e. g., United States v. Whitmire,* 595 F.2d 1303, 1316–17 (5th Cir. 1979).

The government attempts to salvage its case on appeal by asserting that the closing argument of the defense counsel essentially conceded that the crew knew what they were doing.[5] All we will say about the lawyer's argument is that it was not evidence, and the jury cannot make a finding that is unsupported by some evidence. We regret having to reverse the district court's judgment because the government neglect-

---

5. The defense adopted the somewhat improbable strategy of arguing that the defendants were actually transporting the marijuana *to* Mexico from the United States or some third country, and had not yet completed their course "correction" at the time of the Coast

Guard boarding. Consequently, the defense counsel argued to the jury that this was really the only issue before them and made remarks such as, "You may not approve of people who are selling marijuana.... We have never tried to suggest they weren't."

ed to make the case it could have made, but the alternative is to allow the government to prove a conspiracy on the basis of the crew's presence aboard the boat for several hours prior to the Coast Guard boarding. This is little more than mere presence at the scene of the arrest, which has never been a sufficient case for a conspiracy conviction in this Circuit; we will not expand the rule to accommodate the carelessness of the prosecutor. *United States v. Reyes,* 595 F.2d 275, 280–81 (5th Cir. 1979); *United States v. Littrell,* 574 F.2d 828, 833–34 (5th Cir. 1978). *See also United States v. Mehtala,* 578 F.2d 6 (1st Cir. 1978); *United States v. Francomano,* 554 F.2d 483 (1st Cir. 1977). We must, therefore, reverse the convictions of Love and Pieser.

■■■ Captain Willis presents us with a different situation. The government was no more attentive to the required elements of the case against Willis. But the jury may, nevertheless, properly infer that the captain of a vessel is aware of the nature of his cargo. *United States v. Sanchez,* 634 F.2d 937 (5th Cir. 1981). Furthermore, the ship's log shows a great deal of nervousness about the presence of Coast Guard surveillance in the twelve hours prior to the boarding of the SEAMAN BLUES. The jury could also properly infer that the captain would be aware of entries made into the log, even if he did not make them himself, and those entries indicate a strong awareness that the SEAMAN BLUES had good reason to be nervous about Coast Guard surveillance.

■■■ We find that the evidence supports Willis' conviction for conspiracy under this indictment even if the two crew members are acquitted. Willis could not have loaded, unloaded, and sold seventeen tons of marijuana without some assistance, and the indictment included charges of conspiracy with persons unknown to the grand jury. *United States v. Goodwin,* 492 F.2d 1141, 1144–45 (5th Cir. 1974).

The government also attempts to support the case against Willis on appeal with evidence (1) that the SEAMAN BLUES changed its course for the first time in approximately fifty miles only ten minutes before the POINT SAL arrived to board her and (2) that Willis informed the boarding party of a leak in the hold around the ship's shaft glan. These would indeed have been helpful if the government had bothered to prove two other points necessary to connect these facts to the conspiracy issue: (1) that the change in course occurred at a time when the SEAMAN BLUES must have been aware of the POINT SAL's approach and (2) that Willis learned of the leak after the cargo was loaded and could have learned of it only by descending into the hold. The record is devoid of such evidence, or even any indication that the government considered the relevance of these facts to the conspiracy issue.

The evidentiary points that serve to uphold the jury's verdict regarding Willis, however, do not offer any assistance in regard to Love and Pieser. The government did not connect either crew member with the log, with knowledge of the leak in the shaft glan, or any other evidentiary fact that supported Willis' conviction.

### III.

The final issue raised on appeal is whether the comment of a government witness that the SEAMAN BLUES was on a Coast Guard "suspect vessel list" was so inherently prejudicial that the trial court should have granted a mistrial.

■■■ We first reject the defendants' contention that the government intentionally elicited this remark. The record clearly indicates that both the trial court and the government went to significant lengths to avoid mention of the boat's status throughout the trial. The remark came out when a pilot of one of the aircraft that surveilled the SEAMAN BLUES was asked what he had been told by the pilot of the surveillance aircraft he replaced, after defense counsel had insisted that the chain of sur-

veillance be more carefully proved. If the court and government counsel strayed too closely towards an item of forbidden testimony, it was understandable in light of the need to prove the chain of surveillance between the two pilots.

Secondly, the court immediately instructed the jury to disregard that testimony and, in a later bench conference with counsel, offered to give the jury any additional instructions. The reference to the "suspect vessel list" was extremely fleeting and the meaning of the phrase was never developed. The judge's instruction to the jury and offer to defense counsel were adequate to cure any prejudice that may have resulted. Defense counsel refused further instructions, so we cannot find reversible error in the trial court's refusal to grant a mistrial in the context of this case.

The judgment against appellant Clyde Willis, Jr. is AFFIRMED. The judgment against appellants Robert Love and Christopher Pieser is REVERSED and the case is REMANDED to the district court for entry of a judgment of acquittal for these two defendants.