**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar VILLEGAS–ROJAS,
Defendant-Appellant.**

No. 82–5222.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1983.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1983.

---

Robyn J. Hermann, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Robert J. Bondi, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, VANCE and CLARK, Circuit Judges.

PER CURIAM:

Appellant, Oscar Villegas-Rojas, and four other persons were charged in a two count indictment with conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 955c, and possession with intent to distribute 15,700 pounds of marijuana, 21 U.S.C. § 955a. The defendants were on a vessel which was boarded by the U.S. Coast Guard on April 24, 1981. All defendants were ultimately convicted. Appellant's only contention on appeal is that the evidence was not sufficient to support his conviction. We affirm.

Appellant advances the usual "mere presence" argument, contending that the proof showed only his presence on the vessel and that there was no evidence from which his knowledge, intent or participation could be inferred.

The vessel on which the appellant was apprehended was the Red Cloud, a 70-foot shrimp boat. It had a placard nailed to its bow with the name "Nacional Primero" concealing most of the name "Red Cloud". It flew no flag and showed no home port. It was sighted by a U.S. Coast Guard cutter in the Yucatan Straits four to five days out of Panama, headed in a north to northwesterly direction. At that time its running lights were illuminated but it then extinguished all running lights and commenced evasive maneuvers running at erratic speeds. It was finally boarded for a document and safety inspection by the Coast Guard after an hour's chase. When it was boarded all five individuals aboard were on the top deck where one of them, Gerald A. Jackson, identified himself as the master, stated that their last port of call was Panama and that their next port of call would be Key West, Florida. The vessel had no documents. The Coast Guard officer in charge observed that the boat had no shrimp or fishing gear rigged or in place, and that it had no ice. He also observed food and water aboard sufficient for five people on a five to six day voyage. In searching for the main beam number the officer looked into the main cargo hold, where the ice and shrimp would be kept on a working shrimp boat, and immediately saw 15,700 pounds of marijuana. The contraband had a wholesale value in excess of three million dollars.

■ Our review is confined to determining whether a reasonable trier of fact could find that the evidence established appellant's guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 548 (5th Cir.1982) (Unit B en banc), *aff'd,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In making that determination we must view the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ The circumstances in this case involve much more than the mere presence of the defendant aboard a vessel carrying marijuana. He was on a comparatively small boat heavily laden with marijuana on a long voyage when apprehended in mid-voyage. The vessel flew no flag, had no home port and had masked its true name. The attempt to escape upon its being sighted by the Coast Guard was significant. The jury could also take into account the necessarily close relationship between the captain and crew, the marijuana's obvious stowage in the main hold, the absence of equipment rigged for the vessel's intended use, the requirement of several persons to load the inordinately large cargo, the improbability that drug smugglers would allow an outsider on their small boat carrying over three million dollars worth of contraband, and the failure of the defendant to differentiate himself in any respect from his fellows while the boat was fleeing or after it was boarded. We conclude that our analysis in *United States v. Ceballos,* 706 F.2d 1198 (11th Cir.1983) is controlling. *See also United States v. Munoz,* 692 F.2d 116 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1229, 75 L.Ed.2d 463 (1983); *United States v. Freeman,* 660 F.2d 1030 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); *United States v. Mazyak,* 650 F.2d 788 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); *United States v. De-Weese,* 632 F.2d 1267 (5th Cir.1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981); *United States v. Alfrey,* 620 F.2d 551 (5th Cir.), *cert. denied,* 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980).

AFFIRMED.

CLARK, Circuit Judge, dissenting.

I dissent. The record in this case presents no facts to support the majority's contention that this case involves "much more than the mere presence of the defendant aboard a vessel carrying marijuana." Majority opinion at 566. The majority's summary of the facts is a list of what the government could have established at trial, rather than what was proven to the jury. Moreover, the majority characterizes a 70-foot boat traveling for four or five days as a "small boat" on a "long voyage." *Id.* I find this characterization misleading, and intended to stretch the facts of this case into the already overextended test of *United States v. Alfrey,* 620 F.2d 551 (5th Cir.1980).

In *United States v. Alfrey,* this court first set forth the theory that a permissible inference of guilt in the possession of marijuana could be inferred from the length of the ship's voyage, the necessarily close relationship between the captain and the two-man crew, and the large quantity of marijuana on board. The facts of *Alfrey,* however, established more than these minimal criteria. Officers who boarded the ship testified that they smelled marijuana as they escorted a defendant through the wheelhouse and that they found marijuana in the open wheelhouse and in the salon, common working and living areas for the crew.

In subsequent cases affirming convictions based on the *Alfrey* inference, various additional facts have been present to validate the inference by establishing inevitable knowledge by the defendant of the cargo aboard or criminal purpose of the voyage. For example, in *United States v. DeWeese,* 632 F.2d 1267 (5th Cir.1980), DeWeese identified himself as the captain of the ship when the Coast Guard officers boarded. When an officer asked to see the vessel's ice hold, DeWeese responded, "Sure, but you're not going to like what you find." 632 F.2d at 1269. Thus, the facts established De-

Weese was neither a mere passenger nor ignorant about the ship's cargo.

In the subsequent case of *United States v. Mazyak,* 650 F.2d 788 (5th Cir.1981), in addition to the three *Alfrey* criteria, the government established at trial that Mazyak had lied about his identity and that a letter discovered in the ship's wheelhouse was addressed to all four defendants, thus linking them together. Additionally, there were marijuana stems and seeds on the deck and marijuana was stored in the engine room. The court accordingly affirmed the defendants' convictions.

In *United States v. Munoz,* 692 F.2d 116 (11th Cir.1982), three defendants appealed their convictions for possession of marijuana and conspiracy to import marijuana. In affirming the convictions, this court noted that one defendant, Rivas, was shown to be a member of the crew, and the other two defendants were armed and boarded the ship with the individual who directed the handling of the marijuana and were aboard for the sole purpose of guarding the marijuana.

Where there has been no additional support beyond the three *Alfrey* criteria, this court has wisely been cautious in reviewing the sufficiency of the evidence. In *United States v. Willis,* 639 F.2d 1335 (5th Cir. 1981), while affirming the conviction of the captain, the convictions of two crewmen for conspiracy to possess marijuana with intent to distribute were reversed because "[d]uring the trial, the government never offered any evidence to support an inference that the two crew members knew that the hold contained marijuana—other than the evidence of their mere presence on the boat." 639 F.2d at 1338. The present case presents a similar situation. The government completely failed to present evidence that Villegas-Rojas had any knowledge of the contents of the hold. As in *Willis,* there was no evidence before the jury that Villegas-Rojas had access to the hold, that marijuana was discovered anywhere Villegas-Rojas was known to have been, or that the odor of marijuana was noticed aboard the ship. In *Willis,* the appellate court knew from a

transcript of the pretrial suppression hearing that there was additional evidence of the defendants' guilt. The court concluded that, nevertheless, the convictions of the crewmen for conspiracy could not be based on mere presence aboard a ship laden with marijuana.

This court again reversed a crew member's conviction, for importation of marijuana and possession with intent to distribute marijuana, in *United States v. MacPherson,* 664 F.2d 69 (5th Cir.1981). MacPherson and Underhill were aboard a twenty-five foot boat which was boarded by customs officers. The boat contained 609 pounds of marijuana in a sealed hatch. MacPherson's conviction was affirmed because of ample evidence that he exhibited control over the boat. The only evidence against Underhill, however, was his presence aboard the boat. There was no evidence that Underhill was a crew member or that the odor of marijuana was detectable on the boat. The court reversed Underhill's conviction, concluding that "mere presence in an area where drugs are discovered is insufficient to support a conviction." 664 F.2d at 74.

Despite the expansive interpretation of *Alfrey* adopted by this court in *DeWeese* as dictum, I do not agree that it mandates an affirmance of Villegas-Rojas' conviction. In the present case, the government even failed to show that Villegas-Rojas was a member of the crew of the Red Cloud. Nor did the government present any evidence of when Villegas-Rojas boarded the vessel, what his duties were, or which parts of the ship he had access to. None of the government witnesses testified that the odor or other evidence of marijuana was present outside of the closed hold. This may be a case, like *Willis,* where the prosecution failed to present all its evidence. Or it may be a case where the only evidence against Villegas-Rojas was his presence aboard the Red Cloud. The latter is all that was presented to the jury and is insufficient to sustain his conviction.

The majority's summary of the facts pejoratively mischaracterizes the Red Cloud as a "small boat" on a "long voyage" with

the "obvious stowage" of marijuana in the main hold. In fact, the Red Cloud was a seventy-foot shrimper which had, according to an expert's estimation, been at sea for four days. There was no evidence that the marijuana stored in the hold could be detected by one aboard the ship. Most important, the majority errs in concluding, "[t]he jury could also take into account the necessarily close relationship between the captain and crew," majority opinion at 4, where there was no evidence that Villegas-Rojas was a member of the crew.

The majority's opinion is distressing as much for what it omits, as for what it includes. What the majority fails to consider is whether an innocent individual aboard a seventy-foot boat carrying marijuana may be found guilty of both possession with intent to distribute marijuana and conspiracy solely because of his presence. The holding of the majority answers the question in the affirmative, thus expanding even *DeWeese* to include individuals not shown to be crew members. Now, despite our prior assertions to the contrary, mere presence on a seventy-foot ship for four days is deemed adequate evidence of guilt.