UNITED STATES of America,
Plaintiff–Appellee,

v.

Roberto MIERES–BORGES and
Osvaldo Becerra–Flores,
Defendants–Appellants.

No. 89–5643.

United States Court of Appeals,
Eleventh Circuit.

Dec. 18, 1990.

Richard C. Gagliano, Miami, Fla., for Mieres–Borges.

Simon T. Steckel, Coral Gables, Fla., Mark King Leban, Miami, Fla., for Becerra–Flores.

William C. Healy, Linda Collins–Hertz and Dawn Bowen, Asst. U.S. Attys., Miami, Fla., for U.S.

Before FAY and JOHNSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

FAY, Circuit Judge:

Defendants-appellants Roberto Mieres–Borges and Osvaldo Becerra–Flores appeal their convictions in federal district court for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and for possession with intent to distribute in excess of five kilograms of cocaine. Both appellants challenge the sufficiency of the evidence to support the jury verdicts against them. Because we find that the evidence presented at trial was insufficient to establish the guilt of Appellant Osvaldo Becerra–Flores beyond a reasonable doubt, we REVERSE his conviction

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

on both counts. Because we find that the evidence presented at trial would allow a reasonable factfinder to conclude that Appellant Roberto Mieres–Borges was guilty beyond a reasonable doubt, we SUSTAIN his conviction on both counts. In the alternative, Appellant Mieres–Borges challenges his conviction on the ground that the weight of the cocaine he possessed was not established at trial beyond a reasonable doubt. Because we find that the government was not required to establish the weight of the cocaine seized as an element of the offenses charged, we SUSTAIN his conviction on this ground as well. Finally, Appellant Mieres–Borges challenges the district court's determination of his base offense level under the United States Sentencing Guidelines. Mieres–Borges maintains that the district court erred in refusing to require proof of the weight of the cocaine beyond a reasonable doubt for purposes of sentencing, and that it erred in refusing to reduce his base offense level by two points for his minor role in the offense. For the reasons that follow, we AFFIRM the refusal of the district court to require proof of the weight of the cocaine possessed by Mieres–Borges beyond a reasonable doubt. In addition, we AFFIRM the district court's refusal to reduce the base offense level of Mieres–Borges under section 3B1.2 of the Sentencing Guidelines.

*Procedural History*

Appellants Roberto Mieres–Borges and Osvaldo Becerra–Flores were indicted by a federal grand jury on two counts. Count one charged appellants with possession with intent to distribute in excess of five kilograms of cocaine in violation of 46 U.S. C.App. §§ 1903(a) and 1903(g) and 18 U.S.C. § 2. Count two charged appellants with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine in violation of 46 U.S.C.App. §§ 1903(j) and 1903(g). Appellants and a co-defendant[1] were convicted by a jury on

both counts. At a bifurcated trial, the jury first returned a verdict against Becerra–Flores. This verdict was sealed while the government presented additional evidence of a statement made by Mieres–Borges to a criminal investigator for the United States Customs Service. Considering this statement in addition to the evidence already presented against Becerra–Flores, the jury then returned a verdict against Mieres–Borges. Both appellants are currently incarcerated.

*Factual History*

On the evening of November 7, 1988, a United States Customs Service sensor aircraft[2] was launched from Homestead Air Force Base in response to information that an air drop of narcotics was to take place in the Cay Sal Bank area.[3] While conducting a radar patrol of the area, the pilot, David Sherry, responded to a specific report of an aircraft going over Cuba and flying very low to the ground. Arriving at an area just south of Cay Sal, at approximately twenty minutes before dusk, Sherry saw an aircraft circling over a vessel at a very low altitude and dropping bales. The boat was circling in the same manner as the plane and was picking up the bales as they were dropped. Sherry counted twenty bales that were dropped from the plane into the water.

Faced with the choice of whether to pursue the boat or the plane, Sherry followed the aircraft as it travelled west along Cuban airspace. Fearful of an encounter with a Cuban fighter plane, Sherry eventually abandoned his pursuit and returned to the Cay Sal Bank area to look for the vessel. When he returned after 40 minutes, the vessel could not be relocated.

Sherry described the boat as white, 40 to 50 feet in length, with tuna towers and a number of antennas. He admitted at trial, however, that there were numerous boats

---

1. The co-defendant fled the jurisdiction prior to sentencing and is not a party to this appeal.

2. The sensor aircraft is equipped with a radar and a forward looking infrared camera for detecting drug traffickers both in the air and on the sea.

3. The Cay Sal Bank area, and Cay Sal Island, are located midway between the Florida Keys and the island of Cuba.

in the area of southern Florida to the Bahamas matching that description. Further, the evidence at trial showed that the Customs plane was flying at an altitude of 2500 feet[4] and that visibility was not optimal. For these reasons, Sherry was unable to ascertain the name of the vessel.

A second Customs plane was launched to search for the boat at six a.m. the following morning, approximately twelve hours after Sherry first spotted the vessel. When he arrived at Cay Sal, the pilot, William Radtke, saw only one boat which resembled the vessel described by Sherry. Radtke described the boat as a 30 to 40 foot sportfishing vessel with a tuna tower, sitting approximately ten feet off of the south beach of Cay Sal. The name of the boat was the "Wilfred" from Miami, Florida.

Radtke left the boat to go to the drop point from the night before and returned to Cay Sal when he didn't see any bales or any other vessels. As he approached Cay Sal, he noticed the Wilfred was underway and heading away from the island with a cover[5] over the back of the transom hiding the name of the boat. The boat was headed toward Cuba, travelling at 30 knots.[6] Radtke then flew over Cay Sal and saw numerous rectangular bales wrapped in white plastic and stacked on the high water mark of the beach.[7] He described a set of roundtrip like footprints leading from the water to where the bales were stacked and back to the water again. The footprints leading to and from the water were in the area where the Wilfred was originally sighted by Radtke.

Radtke admitted at trial that there was a discrepancy between the size of the Wilfred, which he described as 30 to 40 feet in length, and the size of the vessel spotted by Sherry the evening before, which was described as 40 to 50 feet in length. Although Radtke testified that he saw no other boats within a 30–mile radius of the Cay Sal beach where the Wilfred was spotted, he stated that he was conducting only a visual search of the area without the benefit of radar. In addition, Radtke admitted that a boat like the Wilfred could have travelled 360 miles in the twelve hours between the time that the unidentified boat was spotted by Sherry picking up bales, and the time that the Wilfred was first identified off of Cay Sal. Radtke never saw any contraband aboard the Wilfred.

Radtke radioed Chief Quartermaster Rafael Lewis, of the United States Coast Guard, to intercept the Wilfred. Lewis spotted the Wilfred between nine and nine-thirty a.m. heading toward Cuban territorial waters at a speed of ten to fifteen knots.[8] Lewis contacted the Wilfred by radio and asked a series of standard pre-boarding questions. Lewis first asked what was the Wilfred's latest port of call. The captain of the Wilfred[9] responded three times that they had been at Cayo Blanco.[10] The fourth time[11] the captain changed his answer and stated that he had departed Key Largo, Florida. When Lewis asked what the Wilfred's next port of call was, the captain stated that they were headed back to Key Largo. Finally, when Lewis inquired as to the purpose of the

---

4. The Customs pilot testified that he did not want to fly so low as to be detected by the boat below and thereby risk destruction of any contraband the boat may have been carrying.

5. Radtke described the cover as a brown burlap cover or brown rug thrown over the back of the transom.

6. Thirty knots is the approximate equivalent of thirty-five to thirty-six miles per hour.

7. Radtke testified that he didn't see the bales on the beach when he made his first sweep over Cay Sal Island. He emphasized, however, that he wasn't at that time looking for anything but the boat spotted the evening before.

8. Ten to fifteen knots is the approximate equivalent of thirteen to eighteen miles per hour.

9. Evidence presented at trial did not reveal which of the defendants was the captain of the Wilfred.

10. Cayo Blanco is in Cuban territorial waters.

11. Lewis testified that he found it unusual for a United States vessel to be inside Cuban territorial waters. For this reason he asked the captain of the Wilfred three times to repeat his answer.

Wilfred's voyage, the captain responded that they were fishing. The Coast Guard then boarded the Wilfred to check documentation and compliance with safety regulations. Lewis testified that when asked to point to a position on the nautical chart where he had been fishing, the captain was very vague and didn't pinpoint any particular position. In addition, the captain of the Wilfred kept no nautical log on board that indicated where the Wilfred had been.[12]

A three to four hour inspection of the Wilfred revealed no contraband aboard the vessel. The Wilfred had fishing equipment on board, although the equipment was not rigged. The boat's outriggers were also not rigged. While there were no freshly caught fish on board, there was ice in the fishing box, as well as two unopened containers of bait. There was scuba gear on board, and there were fishing rigs out on deck, which were not baited. A temporary fishing license was found on the vessel, which allowed the Wilfred to fish in American waters.[13] The Wilfred's captain stated that they were fishing for dolphin.[14]

*Sufficiency of the evidence*

▮▮▮▮ Whether there was sufficient evidence to support a conviction is a question of law subject to de novo review by this Court. Thus, we owe no special deference to findings of the district court. *United States v. Kelly*, 888 F.2d 732, 739–40 (11th Cir.1989) (citing *United States v. Pareja*, 876 F.2d 1567, 1568 (11th Cir.1989)). In reviewing the sufficiency of the evidence to support a jury verdict, we must view the evidence in the light most favorable to the government. *United States v. Chotas*, 913 F.2d 897, 898 (11th Cir.1990) (per curiam) (citations omitted). Thus, all reasonable inferences and credibility choices are made in the government's favor. *United States v. Kelly*, 888 F.2d at 740 (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct.

457, 469, 86 L.Ed. 680 (1942); *United States v. Gregory*, 730 F.2d 692, 700 (11th Cir.1984), *cert. denied*, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985)).

Accepting all reasonable inferences which support the verdict, we will affirm the conviction " 'if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt.' " *United States v. Pritchett*, 908 F.2d 816, 820 (11th Cir.1990) (citations omitted); *United States v. Chotas*, 913 F.2d at 898 (citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)).[15] It is not necessary "for the government to disprove every reasonable hypothesis of innocence, as the jury is 'free to choose among reasonable constructions of the evidence.' " *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir.1990) (citing *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983) (quoting *United States v. Bell*, 678 F.2d at 549)). All that is necessary is that a reasonable factfinder could conclude that the evidence establishes guilt beyond a reasonable doubt. *United States v. Kelly*, 888 F.2d at 740 (citations omitted).

▮▮▮ Therefore, we cannot reverse a conviction for insufficiency of the evidence unless we conclude that no reasonable factfinder could find proof of guilt beyond a reasonable doubt. *United States v. Jones*, 913 F.2d at 1557. "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." *United States v. Kelly*, 888 F.2d at 740 (citations omitted).

▮▮▮ The test for sufficiency of evidence is identical regardless of whether the evi-

---

**12.** Lewis admitted on cross-examination that not all small boats keep such logs.

**13.** The license did not allow the Wilfred to fish in Cay Sal or in Cuban waters. When asked if he had been fishing in the Cay Sal Island area, the captain stated that he had not.

**14.** The Coast Guard officer acknowledged that because dolphin are migratory, it is impossible

to anticipate where they will be before going out to fish for them.

**15.** Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

dence is direct or circumstantial, and "no distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Gonzalez,* 719 F.2d 1516, 1521 (11th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984) (citations omitted). "Where the government seeks to meet its burden of proof on the basis of circumstantial evidence, however, it must rely on *reasonable* inferences in order to establish a prima facie case." *United States v. Villegas,* 911 F.2d 623, 628 (11th Cir.1990) (emphasis added).

### Osvaldo Becerra–Flores

■ The only evidence presented at trial against Appellant Becerra–Flores was circumstantial. In order to find Becerra–Flores guilty, therefore, a reasonable factfinder must conclude beyond a reasonable doubt, drawing reasonable inferences from such circumstantial evidence, that the appellant did possess and conspire to possess in excess of five kilograms of cocaine with the intent to distribute. We believe that the evidence presented at trial is insufficient to allow a reasonable factfinder to conclude that Becerra–Flores was guilty beyond a reasonable doubt.

Becerra–Flores was charged both with conspiracy and with the substantive crime of possession. Because evidence of possession would also serve as circumstantial evidence of the existence of a conspiratorial agreement to possess cocaine with the intent to distribute, the facts here must be analyzed with respect to the elements of both crimes.

In order to support a conviction for conspiracy, the government must prove " 'that an agreement existed between two or more people to commit a crime, that the accused had knowledge of at least the essential objectives of that agreement, and that armed with that knowledge, he voluntarily joined or participated in the illegal venture.' " *United States v. Battle,* 892 F.2d 992, 999 (11th Cir.1990) (quoting *United States v. Pantoja–Soto,* 739 F.2d 1520,

1525 (11th Cir.1984), *cert. denied,* 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985)). The existence of a conspiracy may be established through direct or circumstantial evidence. *United States v. Montes–Cardenas,* 746 F.2d 771, 778 (11th Cir.1984) (citations omitted). Thus, "direct evidence of the elements of a conspiracy is not required. A defendant's knowing participation in a conspiracy may be established through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." *United States v. Bain,* 736 F.2d 1480, 1485 (11th Cir.1984), *cert. denied,* 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984) (citation omitted).

■ Possession of a controlled substance with intent to distribute may also be shown by either direct or circumstantial evidence. *United States v. Pantoja–Soto,* 739 F.2d at 1525 (citing *United States v. Bustos–Guzman,* 685 F.2d 1278, 1280 (11th Cir.1982) (per curiam)). Furthermore, possession may either be actual or constructive. Constructive possession will be found where there is a " 'knowing exercise of or the knowing power or right to exercise dominion and control over the substance.' " *United States v. Poole,* 878 F.2d 1389, 1392 (11th Cir.1989) (quoting *United States v. Knight,* 705 F.2d 432, 433 (11th Cir.1983)). Even constructive possession need not be exclusive, but may be shown circumstantially through evidence of ownership, dominion, or control over the premises on which the substance is located. *Id.* (citations omitted). "[M]ere presence in the area of contraband or awareness of its location is not sufficient to establish possession." *United States v. Maspero,* 496 F.2d 1354, 1359 (5th Cir.1974).[16]

We believe that the evidence presented at trial was insufficient to allow a reasonable factfinder to conclude beyond a reasonable doubt that Becerra–Flores was part of a conspiratorial agreement to possess cocaine with the intent to distribute, or that Becerra–Flores did in fact possess cocaine with the intent to distribute. Most

---

**16.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

significant to Becerra–Flores' challenge to the sufficiency of the evidence against him, is the requirement that the government prove that the appellants actually entered into an agreement with the purpose of achieving an unlawful objective. *See United States v. DeSimone*, 660 F.2d 532, 537–38 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982). It is well established that "[i]nferences from the conduct of the alleged participants or from other circumstantial evidence of a scheme may provide the basis for establishing that a conspiratorial agreement existed." *United States v. Pantoja–Soto*, 739 F.2d at 1525 (citations omitted). From the evidence presented at trial against Becerra–Flores, however, we are not convinced that the government met its burden by establishing the existence of a conspiratorial agreement beyond a reasonable doubt. No evidence showed that Becerra–Flores ever entered into an agreement with any other defendant to distribute cocaine. Furthermore, Becerra–Flores was not shown to have committed any acts which would further such a conspiracy.

Similarly, we believe that the government failed to establish, by and through the evidence presented against Becerra–Flores, that he did in fact possess cocaine with the intent to distribute. It is without question that Becerra–Flores was never shown to be in actual possession of any of the bales of cocaine discovered on the beach at Cay Sal. Constructive possession was also never established by the government at trial. It is simply not clear beyond a reasonable doubt that Becerra–Flores had a knowing power or right to exercise dominion and control over the bales of cocaine. Becerra–Flores was never seen on the beach with the bales of cocaine; in fact, none of the defendants aboard the Wilfred were seen with the cocaine. No evidence was presented which showed that Becerra–Flores or any other defendant ever left the Wilfred and went ashore on Cay Sal. Further, none of the defendants was shown to evince any dominion or control over the beach on which the cocaine was found. There was no evidence of any attempt to guard the beach or to prevent others from going ashore.

This circuit has declared that "[c]onspiracy implies much more than physical proximity to purported coconspirators; possession entails more than physical proximity to the controlled substance." *United States v. Pantoja–Soto*, 739 F.2d at 1526. Where, as here, the government presents no evidence of the existence of a conspiratorial agreement and no evidence that a defendant did in fact possess a controlled substance with the intent to distribute, it has not met the burden of proof necessary to convict on charges of conspiracy and possession.

■ We recognize that the evidence presented at trial goes a long way toward establishing the defendants' presence in the area of contraband and their flight from that area when approached by law enforcement officials. We stress, however, that this alone is insufficient to support a finding of guilt beyond a reasonable doubt. It is well beyond question that mere physical presence at the scene of criminal activity is insufficient to support a finding of guilt. *United States v. Jenkins*, 779 F.2d 606, 616 (11th Cir.1986); *United States v. Pantoja–Soto*, 739 F.2d at 1526. It is also well established that "even presence coupled with flight, without more, does not establish participation in a conspiracy." *See also United States v. Castro*, 723 F.2d 1527, 1534 (11th Cir.1984); *United States v. DeSimone*, 660 F.2d at 537; *United States v. Lopez–Ortiz*, 492 F.2d 109, 115 (5th Cir.), *cert. denied*, 419 U.S. 1052, 95 S.Ct. 630, 42 L.Ed.2d 647 (1974). Presence and flight must be considered along with other evidence, and the reviewing court should consider whether, under the totality of the circumstances, there is sufficient evidence to support a jury verdict when the facts are viewed in the light most favorable to the government. *United States v. Lopez–Llerena*, 721 F.2d 311, 312 (11th Cir. 1983) (denial of rehearing), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984) (citing *United States v. Pintado*, 715 F.2d 1501, 1503 (11th Cir.1983); *United States v. Blasco*, 702 F.2d 1315, 1331–32

(11th Cir.), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983)).

We do not believe that sufficient evidence was presented by the government which, in addition to presence and flight, would allow a reasonable factfinder to conclude that Becerra–Flores was guilty beyond a reasonable doubt. The initial description of the vessel spotted picking up bales, given by Customs Service pilot David Sherry, provided only the very general picture of a sportfishing vessel with a tuna tower, antennas and outriggers. In the waters off of the Florida Keys, the Bahamas, and the island of Cuba, however, that general picture would match the characteristics of literally hundreds of boats. When the Wilfred was identified by Customs Service pilot William Radtke twelve hours later off of Cay Sal Island, it failed to match even the general description given by Sherry the night before. While the vessel spotted by Sherry was described as 40 to 50 feet in length, the Wilfred was later described by Radtke as only 30 to 40 feet in length.

Because Sherry was unable to ascertain the name of the vessel he saw, it is in no way clear that the Wilfred was the boat described by Sherry. Although Radtke stated that the Wilfred was the only boat he saw within a thirty mile radius, any number of boats could have moved in and out of the Cay Sal area in the twelve hours between Sherry's initial sighting and Radtke's identification of the Wilfred. Furthermore, Radtke only conducted a visual search of the Cay Sal area on the morning he spotted the Wilfred. A radar search may have revealed other vessels outside of that thirty-mile radius. Finally, while Sherry testified that he counted twenty bales being dropped from the plane into the water, only eleven bales were recovered from the beach on Cay Sal. The fact that nine bales of cocaine were unaccounted for would seem to indicate that another vessel either removed some bales from the beach, or that the vessel which picked up the bales did not deposit all of them on the beach in the first instance. Under either scenario, it becomes even harder to establish a direct connection between the Wilfred and the bales of cocaine.

The chain of events on the morning after Sherry's initial sighting of the vessel taken together present a very suspicious scenario. We do not agree, however, that this suspicious set of facts is sufficient to establish the guilt of Becerra–Flores beyond a reasonable doubt. When Radtke returned to the beach where he first saw the Wilfred, he noticed that the vessel was underway and heading away from the island with a cover over the back of the transom hiding the name of the boat. Flying over the island, Radtke for the first time noticed bales stacked on the high water mark of the beach, as well as roundtrip footprints leading from the area in the water where the Wilfred had been to the bales and back to the water.

■ These facts, viewed in the light most favorable to the government, go a long way toward establishing both the Wilfred's presence in an area where contraband was found, as well as its flight from that area. As we have noted, however, other factors have been necessary in order to supplement the inference of guilt provided by presence. *See e.g., United States v. Bergouignan,* 764 F.2d 1503, 1509 (11th Cir.1985) (where, in addition to the defendant's presence next to a vessel containing marijuana, evidence showed that traces of marijuana residue were found on his clothing), *cert. denied,* 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988). The proximity of the Wilfred to the bales of cocaine stacked on the high water mark of Cay Sal Island, therefore, is insufficient as a matter of law to allow a finding of guilt beyond a reasonable doubt.[17]

17. We note that even the conclusion that the Wilfred was present in the area where the cocaine was found requires an inference drawn from circumstantial evidence. To be sure, the Wilfred was first sighted by Radtke in the same area where he testified that he saw roundtrip footprints leading from the water to where the cocaine was stacked on the beach. No evidence was presented, however, which established that anyone on board the Wilfred ever left the boat to set foot on Cay Sal Island. Radtke never saw anyone on the beach. In addition, there was no

We recognize the existence of other facts, in addition to presence and flight, which implicate the defendants' guilt. However, the government did not present enough additional evidence against Becerra–Flores to support a guilty verdict. When questioned by the Coast Guard as to their latest port of call, the captain of the Wilfred changed his answer after being asked to repeat it several times. In addition, while the captain stated that the purpose of the Wilfred's trip was to fish for dolphin, he had difficulty pointing to a particular position on a nautical chart where the vessel had been fishing. While this may constitute suspicious behavior, it does not rise to the level necessary to find a conspiracy to possess cocaine, or possession of cocaine, beyond a reasonable doubt.

Once the Coast Guard intercepted the Wilfred, a three to four hour inspection of the vessel revealed no contraband aboard. The Wilfred had fishing equipment and scuba gear on board. Although the fishing equipment was not rigged and there were no freshly caught fish on board, there was ice in the fishing box, which contained two unopened boxes of bait. *Compare United States v. Ceballos*, 706 F.2d 1198, 1202 (11th Cir.1983) (where shrimping vessel carrying marijuana lacked any rigging for shrimping, this negated any inference that crew was unaware of marijuana on board and believed the purpose of their trip was to fish); *United States v. Villejas–Rojas*, 715 F.2d 564, 565–66 (where, in addition to the defendant's presence on board a vessel carrying marijuana, evidence showed that the vessel flew no flag, had no home port and had hidden its real name, had attempted to elude the Coast Guard, and had no shrimp, ice or fishing gear on board). Once again, the fact that the fishing equipment on board the Wilfred was unrigged

and the boxes of bait were unopened may give rise to an inference that the Wilfred was not, in fact, fishing. This inference will not, however, support a conclusion beyond a reasonable doubt that the persons aboard the Wilfred were part of a conspiracy to possess cocaine with intent to distribute, or that they in fact possessed cocaine with intent to distribute.

Evaluating the sufficiency of evidence to support a criminal conviction often presents the reviewing court with the difficult job of drawing a clear line where none truly exists. The standard of proof which the government must meet, however, is a stringent one, and based upon the evidence presented at trial, we find that the government has not met this standard. Therefore, because we find that the evidence presented was insufficient to establish the guilt of Osvaldo Becerra–Flores beyond a reasonable doubt, we REVERSE his conviction on both counts.

*Roberto Mieres–Borges*

■ Appellant Roberto Mieres–Borges also challenges the sufficiency of the evidence to support his conviction. After closing arguments in the trial of Osvaldo Becerra–Flores, the jury returned a sealed verdict with respect to Becerra–Flores. Additional evidence was then presented against Appellant Roberto Mieres–Borges, which the jury considered in conjunction with the evidence already presented against Becerra–Flores. The jury subsequently found Mieres–Borges guilty on both counts charged in the indictment.

The additional evidence presented against Mieres–Borges consisted of a statement made by Mieres–Borges to a criminal investigator for the United States Customs Service. Mieres–Borges stated that the

---

physical evidence on the Wilfred, such as sand or water on deck, to indicate that anyone had left the boat, waded to shore, and then returned to the boat. And finally, no evidence was presented that the persons aboard the Wilfred were dressed in wet clothing or that wet clothes were found on board the vessel. Cases in this circuit where presence has served as a basis for establishing guilt have shown a more certain connection between defendants and contraband than exists here. *See United States v. Pantoja–*

*Soto,* 739 F.2d at 1526 (appellants present at a service station where drugs were found in the station's service bay); *United States v. Ceballos,* 706 F.2d 1198, 1202 (11th Cir.1983) (presence found where shrimping vessel was carrying marijuana); *United States v. Villegas–Rojas,* 715 F.2d 564, 565–66 (11th Cir.1983) (defendants present on vessel carrying marijuana), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

Wilfred was out fishing when an unknown aircraft overflew their position and began dropping packages. The persons aboard the Wilfred then picked up the packages and put them on the boat. After examining the contents of the packages, they elected to put the packages on a nearby island.

The statement made by Mieres–Borges directly links him to the cocaine found on the beach at Cay Sal, a link which was absent in the evidence presented against Becerra–Flores. In light of this additional evidence, we find that a reasonable factfinder could conclude that Mieres–Borges was guilty beyond a reasonable doubt of conspiracy to possess cocaine with intent to distribute and of possession of cocaine with intent to distribute.

▆▆▆ Mieres–Borges argues, in the alternative, that his conviction must be overturned because the government failed to establish that the weight of the cocaine seized by the law enforcement authorities exceeded five kilograms as charged in the indictment.[18] This argument is without merit. The statute under which Mieres–Borges was convicted, 46 U.S.C.App. § 1903(a), (j),[19] does not specify any quantity or weight of cocaine as an element of the substantive offense. *See United States v. Fuentes*, 877 F.2d 895, 899 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 347, 107 L.Ed.2d 335 (1989); *United States v. Mena*, 863 F.2d 1522, 1529–30 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 109, 107 L.Ed.2d 72 (1989). Thus, it is unnecessary for the government to prove weight or quantity beyond a reasonable doubt. *United States v. Mena*, 863 F.2d at 1530. For the above reasons, therefore, we SUSTAIN the conviction of Roberto Mieres–Borges on both counts.[20]

---

**18.** Mieres–Borges raises this alternative argument by adopting the argument of Appellant Becerra–Flores on the sufficiency of evidence issue. Because we found that there was insufficient evidence to convict Becerra–Flores, it became unnecessary to reach the issue of the weight of the cocaine with respect to Becerra–Flores.

**19.** The statute provides that
(a) Vessels of the United States or vessels subject to jurisdiction of the United States.
It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
(j) Attempt or conspiracy
Any person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine, or both, which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
46 U.S.C.A.App. § 1903(a), (j) (1989).

**20.** We have some cautionary words for two of the counsel appearing in this appeal.
Both in its brief and at oral argument, the government failed to argue that the statement made by Roberto Mieres–Borges provided sufficient evidence to sustain his conviction. When asked specifically at oral argument whether it could present any evidence which would link either of the appellants to the cocaine, beyond that which was presented against Osvaldo Becerra–Flores, the United States Attorney stated that no such evidence existed. A simple reading of the record of the proceedings in the district court would have revealed that the trial was bifurcated and that additional evidence was presented against Mieres–Borges. While we recognize the heavy case load under which the United States Attorney labors, we wish to emphasize the importance of the record to every case, and particularly to cases involving the sufficiency of evidence.
We also note that counsel for Appellant Mieres–Borges adopted the argument of counsel for Appellant Becerra–Flores on the sufficiency of evidence issue. While Rule 28(i) of the Federal Rules of Appellate Procedure certainly allows counsel for one appellant to rely on the argument of counsel for another appellant, this procedure should not be employed for the purpose of deceiving the appellate court. Counsel for Mieres–Borges defended Mieres–Borges at trial in the district court, and so was well aware of the statement made by the appellant which constituted additional evidence against him. Yet nowhere in the brief, whether in its statement of procedural or factual history or in its legal argument, and at no time during oral argument, was this evidence mentioned. This was made possible largely because, in light of the adoption of argument under Rule 28(i), counsel for Mieres–Borges focused only on the sentencing issue in his brief and at oral argument. We caution counsel for Mieres–Borges to be more forthright in his presentation of facts and in his argument before this court in the future.

*Application of United States Sentencing Guidelines*

■ Appellant Mieres–Borges challenges the district court's determination of his base offense level under the United States Sentencing Guidelines. Mieres–Borges first maintains that the district court erred in allowing the government to establish the weight of the cocaine for sentencing purposes under a preponderance of the evidence standard. Mieres–Borges asserts that instead, evidence beyond a reasonable doubt was necessary in order to impose sentence for possession of a particular amount of cocaine. We disagree.

The district court found, based upon the weight of the cocaine as established at trial, that Mieres–Borges should be sentenced under a base offense level of 36.[21] The appellant argues that a base offense level of 32 was mandated[22] because the government failed to establish the weight of the cocaine necessary for application of the higher level. Because we find that the district court need only have applied a preponderance of the evidence standard in determining the weight of the cocaine, we reject appellant's reasoning.

■ "The Supreme Court has held that the prosecution need not ' "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." ' *United States v. Cross*, 916 F.2d 622, 623 (11th Cir.1990) (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986) (citations omitted)). "In determining which facts must be proven beyond a reasonable doubt, the legislature's definition of the elements of an offense controls." *United States v. Cross*, 916 F.2d at 623; *McMillan v. Pennsylvania*, 477 U.S. at 85, 106 S.Ct. at 2415–16.

"Thus, the prosecution is only required to prove beyond a reasonable doubt 'all of the elements *included in the definition of the offense* of which the defendant is charged.'" *United States v. Cross*, 916 F.2d at 623 (quoting *McMillan v. Pennsylvania*, 477 U.S. at 84, 106 S.Ct. at 2415, (citation omitted)_ (emphasis added in *McMillan*). District courts are required by due process to make factual determinations at sentencing only by a preponderance of the evidence. *United States v. Ignacio Munio*, 909 F.2d 436, 439 (11th Cir.1990); *United States v. Alston*, 895 F.2d 1362, 1372–73 (11th Cir.1990).

Again, the statute under which Mieres–Borges was convicted does not include weight or quantity as an element of the offense. Therefore, the district court was only required to determine the weight of the cocaine by a preponderance of the evidence for purposes of sentencing. The district court judge found that the weight of the cocaine as established at trial was over three times that required for application of a base offense level of 36.[23] This weight was established through the testimony of a Drug Enforcement Administration agent, who testified that he lifted six or seven of the eleven bales and found them to weigh at least five kilograms each. In addition, evidence of a logbook entry from the drug storage warehouse listed the weight of the cocaine seized as 605 pounds, or 275 kilograms. We believe that this evidence was sufficient to establish, by a preponderance of the evidence, the weight of the cocaine. Accordingly, we AFFIRM the district court's application of a base offense level of 36 to Roberto Mieres–Borges.

■ Finally, Mieres–Borges challenges the refusal of the district court to allow a two level reduction in his base offense level based on his minor role in the offense. We have held that a district court's determina-

---

**21.** That level is applied where a defendant is convicted with respect to at least 50 kilograms but less than 150 kilograms of cocaine. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(4) (Nov.1989).

**22.** That level is applied where a defendant is convicted with respect to at least 5 kilograms but less than 15 kilograms of cocaine. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(6) (Nov.1989).

**23.** The judge found that it was established at trial that there were 275 kilograms of cocaine on the beach at Cay Sal.

tion of a defendant's role in an offense is a finding of fact to which the clearly erroneous standard is applied. *United States v. Carrillo*, 888 F.2d 117, 118 (11th Cir.1989) (per curiam) (citations omitted). The district judge found no evidence that Mieres–Borges was any less culpable than his co-defendants. Because we do not find this conclusion to be clearly erroneous, we AFFIRM the district court's denial of a two point reduction in the base offense level of Roberto Mieres–Borges, under section 3B1.2 of the Sentencing Guidelines.

*Conclusion*

For the above reasons, we hereby REVERSE the conviction of Appellant Osvaldo Becerra–Flores on both counts. We SUSTAIN the conviction of Appellant Roberto Mieres–Borges on both counts and AFFIRM the district court's application of the United States Sentencing Guidelines to Mieres–Borges.

JOHNSON, Circuit Judge, dissenting:

I dissent. Though I agree with the majority that the evidence was insufficient to justify convicting defendant Becerra–Flores, I cannot agree that the addition of Mieres–Borges' post-arrest exculpatory statement tips the scales so far in favor of conviction that we can conclude that the jury could reasonably find Mieres–Borges guilty beyond a reasonable doubt.

"Reasonable doubt" is defined "in terms of the kind of doubt that would make a person hesitate to act." *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954). Our Circuit has defined the exacting standard of "beyond a reasonable doubt" as "proof of a 'convincing character' sufficient to justify reliance 'without hesitation' in the conduct of one's 'most important affairs.' " *United States v. Jones*, 663 F.2d 567, 571 (5th Cir. Unit B 1981) (quoting jury charge approved of in that case). The prosecution has the burden of proving "beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). The crime of posses-

sion with intent to distribute with which Mieres–Borges was charged requires that the prosecution show, by proof of such convincing character that it justifies the jury's reliance upon it without hesitation, three essential elements: "(1) knowing (2) possession of a controlled substance (3) with intent to distribute it." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983); *see also* 46 U.S.C.A.App. § 1903(a) (proof of violation of this statute, with which Mieres–Borges was specifically charged, also requires that the crime occur on board a vessel). To prove the crime of conspiracy, the government must prove by the same standard three more essential elements: (1) "an agreement existed between two or more people to commit a crime," (2) "the accused had knowledge of at least the essential objectives of that agreement," and (3) "armed with that knowledge, he voluntarily joined or participated in the illegal venture." *United States v. Pantoja–Soto*, 739 F.2d 1520, 1525 (11th Cir.1984), *cert. denied*, 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985).

Our standard for reviewing the sufficiency of the evidence requires us to reverse the conviction if "there is a lack of substantial evidence ... from which a reasonable factfinder could find guilt [without hesitation]." *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir.1989). While the factfinder need not exclude every reasonable hypothesis of innocence, the evidence must be declared insufficient "where such evidence is wholly consistent with an obvious and reasonable innocent interpretation." *Id.* Rather than demonstrating guilt, Mieres–Borges' exculpatory statement more sensibly implicates an innocent explanation of what the defendants were doing in proximity to the cocaine. The defendants were in the area; an unfamiliar plane flew overhead dropping packages; they fished them out of the water and examined them; they decided to get rid of them by stacking them on the beach.

Mieres–Borges' explanation goes a long way toward explaining some of the peculiarities of this case. First, on the evening of November 7th the customs pilot ob-

served the smugglers' plane drop at least twenty bales, but only eleven were found on the beach. If the defendants picked up some of these bales out of curiosity, it would make sense that once they realized that the bales contained contraband and began to appreciate the consequences of their possession of the bales they would not pursue the remaining ones. Second, there was testimony at trial by the agents that, in the twelve hours between the sighting of the boat on the evening of November 7th and the sighting the next morning, the defendants' boat could have traveled hundreds of miles. But the pilot spotted the boat on the morning of the 8th only 30 miles from the drop site. If the defendants were the smugglers, it makes no sense that they would stay in the area of the drop site, waiting for law enforcement officers to discover them. Though they may not have known that they had been observed on the evening of the 7th, it still is not typical criminal behavior to dally at the scene of the crime for twelve hours. Third, it remains unclear why the defendants, if they were actually the smugglers, would have left the cocaine in plain view on the beach, totally unprotected. Though Cay Sal Bank is an undeveloped island, there was testimony that it is a popular fishing and diving spot. It seems that the true smugglers would be very interested in protecting and concealing their investment. But the Coast Guard did not even find a weapon on board the defendants' boat. Fourth, though the agent testified that Mieres–Borges told him in his post-arrest statement that the defendants had examined the packages, there was no evidence that the defendants ever opened any of the packages. On cross-examination the agent clarified that Mieres–Borges had merely stated that they had examined the packages and then decided to put them on the beach. Mieres–Borges apparently did not say that he opened any of the packages. The government did not show that any of the bales found on the beach had been opened. Moreover, there was testimony that the Coast Guard did not find even any residue of cocaine on the boat in spite of an extensive search. If the defendants had opened a package, as drug dealers normally would for testing upon receipt of a delivery, then there surely would have been some residue to be found somewhere on board. In sum, the most reasonable conclusion in this case is that the defendants were not the intended recipients of the dropped bales.

The government did not meet its burden in presenting evidence on each element of the charges which would allow a jury to convict beyond a reasonable doubt or "without hesitation." The exculpatory statement did in fact link Mieres–Borges to the cocaine, as the majority points out, thus showing he had been in possession of it. But the government never put on any direct evidence showing intent to distribute. The crime of possession with intent to distribute may be proven through circumstantial evidence. *Vera,* 701 F.2d at 1357. But here, where there is a reasonable and innocent explanation of the circumstances, to infer intent is simply too long a leap. This is a leap which surely cannot be made "without hesitation." Likewise, the evidence of a conspiracy was totally circumstantial. Though proof of conspiracy by circumstantial evidence is also permissible under *Vera,* and many other cases, it is a long leap to conclude that there existed an agreement between the three defendants and that Mieres–Borges knew the essential objectives of the conspiracy. In sum, Mieres–Borges' exculpatory statement seems to make at least as much sense out of the evidence as the conclusion that the defendants were smuggling drugs. The standard of "beyond a reasonable doubt" is an exacting one. I cannot say that a jury could find "without hesitation" that the government has proven each of the elements of these crimes. I therefore would hold the evidence against Mieres–Borges to be insufficient. Consequently, I would not reach the sentencing issue.