[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14146

_____

D.C. Docket No. 1:14-cr-20792-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEOVANYS GUEVARA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 11, 2018)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,[*] District Judge.

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

ROBRENO, District Judge:

Following a trial in the United States District Court for the Southern District of Florida, a jury found Defendant-Appellant Geovanys Guevara guilty of violating 31 U.S.C. § 5324(b)(2) and 18 U.S.C. § 2 by causing or attempting to cause Sanfer Sports Cars, Inc., a car dealership in Miami, to file certain Form 8300s with the United States Treasury Department that contained material omissions and misstatements of facts concerning Guevara's identity as the individual who provided cash payments of over $10,000 for the purchases of each of three sports cars.  Guevara now appeals his convictions and 48-month prison sentence.

We affirm Guevara's convictions upon finding that the evidence, though circumstantial only, was sufficient to support the jury's verdict.  We remand with instructions to resentence Guevara, however, based on our conclusion that the district court failed to make and explain factual findings that adequately support the application of a two-level sentencing enhancement for obstruction of justice.

I.

The Bank Secrecy Act requires any person who is engaged in a non-financial trade or business to file with the United States Treasury Department a report of any cash payment over $10,000 received by the trade or business.  *See* 31 U.S.C. § 5331.  This report, known as a FinCEN Form 8300, requires the trade or business to verify and record the name and address of the person from whom the

2

cash payment was received, along with the identity, Social Security number, and taxpayer identification number of any person or entity on whose behalf the transaction and cash payment was to be effected.

Prior to the indictment in this case, law enforcement officers from the Internal Revenue Service ("IRS") visited Guevara's home on May 21, 2014, to interview Guevara regarding the ownership of a certain Porsche, Ferrari, Lamborghini, and Rolls Royce, all of which had been purchased from Sanfer for cash. The Form 8300s submitted to the IRS listed an individual named Elvis Quiroga ("E.Q") as the individual who had provided over $10,000 in cash for the purchase of each of these cars.

Initially, when the officers spoke with Guevara in the presence of his wife, Guevara lied to the officers about his purchases and ownership of these four vehicles. Several minutes later, however, after Guevara and the officers moved away from Guevara's wife, he admitted that he had lied while speaking in her presence. Guevara further admitted that he was, in fact, the true owner of all the vehicles, that the titles to all the vehicles had been placed in the name of Guevara's friend, E.Q., and that the owner of Sanfer, Carlos Santisteban ("Santisteban"), knew that Guevara was paying for these vehicles and was their true owner. Specifically, Guevara claimed that, for each transaction, he had visited Sanfer, chosen the vehicle, paid for the vehicle using money from a therapy clinic he

3

owned, and then instructed E.Q. to go to the dealership and become the registered owner of the vehicle. For each purchase except the Lamborghini, Guevara stated that he had paid E.Q. $1,000 to take title to the car.

Trial commenced on June 1, 2015. The Government's first witness was E.Q., who had known Guevara for approximately ten years. E.Q. testified that he had agreed to put the titles to four of Guevara's vehicles in his name because the two were good friends who "got along . . . very well." Trial Tr. 132 at 12-13. For each of the four cars, E.Q. testified that Guevara had paid him $1000 to go to Sanfer and take title to the car. E.Q. further testified that he had never indicated to anyone at Sanfer that he was purchasing the cars, or that Guevara was purchasing the cars for him. Finally, E.Q. testified that he did not know how Guevara had paid for any of the cars, and that he, E.Q., never received any copies of the paperwork filed for the purchase of the cars. The paperwork E.Q. never received included letters addressed to E.Q. at his home address, stating, for each of the Ferrari, Lamborghini, and Rolls Royce, that "[i]n compliance [with] IRS reporting standards we have submitted the [Form 8300] to the Department of Treasury for the above mentioned transaction." Gov't Exs. 7B, 7C, 7D.

While questioning E.Q., the Government moved its Exhibit 1 into evidence. Exhibit 1 was a set of five computer-generated summaries created by an unidentified IRS employee on an unidentified date and time. The one-page

4

certification accompanying these summaries stated the following under the heading

"CERTIFICATE OF OFFICIAL RECORD":

> I certify that the annexed records were retrieved at my direction, and are true and complete transcripts of information reported on IRS/FinCEN Form 8300 (OMB No. 1545-0892/1506-BSA Identification Numbers: 31000019592832, 31000026273057, 31000027204734, 31000036312176 and 31000055261633, under the custody of this office.

Gov't Ex. 1.  The certification was signed by "Linda K. Gammon, Chief Law

Enforcement Support Section."  The trial court admitted Exhibit 1 into evidence

without objection.

The next Government witness was a man named Ebian Boza, who had been

a car salesman at Miami Lakes Auto Mall in February 2013, when Guevara had

purchased a Camaro for cash there.  Boza testified that he had advised Guevara at

that time that "[e]very time you buy a car, if you pay in cash more than

$10,000.00, you have to sign a form for the IRS."  Trial Tr. 130 at 60:24-25; 61:1-

2.

The Government then called Officer Azael Acay of the City of Hialeah

Police Department and Police Officer Joseph Miller, each of whom testified that

they had conducted separate routine traffic stops of Guevara while he was driving a

Rolls Royce.  Later, the Government read a stipulation into the record that witness

Sulkary Herbas, if called to testify, would state that, between April 2013 and

5

September 2013, she observed Guevara driving both the Lamborghini and the Rolls Royce.

The Government's next witness was Miami-Dade Police Officer Ulysses Lopez, who had acted as an interpreter for IRS Agent Harlan Daar when Agent Daar interviewed Guevara outside of his residence regarding vehicles purchased from Sanfer. Officer Lopez testified that his report reflected that Guevara had made a photo identification of Santisteban; Guevara had told the officers that he had told Santisteban that he was going to buy cars and put them in E.Q.'s name; Santisteban knew that Guevara was the true owner of the vehicles that he purchased; and Santisteban knew that the money to buy the vehicles came from Guevara.

The Government then called Special Agent Vincent Joseph Lozowicki, who testified that he had reviewed and analyzed Guevara's financial records from Ocean Bank and Bank of America. Lozowicki used these records to complete an income restructuring for Guevara, which is a method of verifying a person's income when no official records exist. This restructuring showed Guevara's income as $118,350 for 2009, $69,557 for 2011, and $323,488 for 2013. These amounts notwithstanding, Guevara had applied for and received a low income tax credit during each of these years.

6

The Government's final witness was Agent Daar, who testified about his interview of Guevara outside of Guevara's house prior to the indictment. He testified that once Guevara was comfortable speaking out of the presence of his wife, he had not hesitated to admit that he was the true owner and purchaser of the Rolls Royce, the Lamborghini, the Porsche, and the Ferrari. Guevara also had described to Agent Daar the procedure he had used to make each purchase.

Agent Daar was next asked general questions concerning the filing of Form 8300s. When asked whose responsibility it was to file the forms, he responded that it is the responsibility of the "trader" who receives the cash. Additionally, Agent Daar testified that the form requires the name of the person who actually gives the cash, the date the cash is received, the amount of cash received, and information about the business receiving the cash and the individual filling out the form. He also testified that Guevara did not have to sign the forms that were completed and sent to the IRS by Sanfer.[1] On cross-examination, Agent Daar testified that he had never asked Guevara any questions regarding the Form 8300s.[2]

---

[1] A purchaser is not required to sign a Form 8300. *See* Trial Tr. 130 at 83:3-4; *see also* FinCEN Form 8300, *available at* https://www.irs.gov/pub/irs-pdf/f8300.pdf (leaving no space for a purchaser's signature).

[2] When asked, "[m]atter of fact, you didn't even show him the Form 8300," Agent Daar's response was, "Well, there is no need to show him that form because he doesn't sign that form." Trial Tr. 140 at 70:4-6.

At the conclusion of the Government's case-in-chief, Guevara moved for judgment of acquittal. The motion was denied. The defense rested without calling any witnesses or presenting any evidence—and then moved again for judgment of acquittal, which was again denied. Ultimately, the jury found Guevara guilty as to Counts 2, 3, and 4 of the indictment.[3]

On June 12, 2015, Guevara filed two additional motions for judgment of acquittal: one based on his assertion that the Government had failed to introduce the actual Form 8300s or certified copies thereof, and one arguing insufficiency of the evidence. The Government opposed the motions for judgment of acquittal on June 25, 2015, and the trial court denied the motions on August 24, 2015.

The Probation Office issued a Presentence Investigation Report ("PSI"). Applying the 2014 Sentencing Guidelines Manual, Guevara's base offense level as to Counts 2-4 was set at 18, pursuant to U.S.S.G. § 2S1.3(a)(2).[4] The Probation Office recommended a two-level enhancement pursuant to § 2S1.3(b)(2) based on the jury's finding that Guevara had committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a twelve-month period. It also recommended a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c), which

---

[3] The jury found Guevara not guilty as to Count 1, which pertained to the Porsche.

[4] This set the base offense level at 6 and added 12 levels pursuant to U.S.S.G. § 2B1.1, based on the amount of funds involved in the transactions.

pertains to an organizer, leader, manager, or supervisor in any criminal activity. Finally, the Probation Office recommended that the district court impose a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for willfully obstructing justice or attempting to obstruct justice or impede an investigation. Guevara's adjusted offense level was 24, and because he did not receive any reductions in the original PSI, his total offense level was also 24.[5]

Guevara filed five objections to the PSI, including an objection to the two-level enhancement for obstruction of justice.  At sentencing, based in part on the Government's agreement, the district court granted Guevara's objection to the determination of the amount of funds involved in the offense and reduced the base offense level to 16.  The district court denied Guevara's remaining objections.

As a result of the district court's rulings, Guevara's final offense level was 22, criminal history category I, which resulted in an advisory sentencing guidelines range of 41 to 51 months' imprisonment.  The district court then sentenced Guevara to 48 months' imprisonment as to all three counts.  At the conclusion of the sentencing hearing, Guevara preserved his objections for appeal.

---

[5] Guevara had no criminal history points, and therefore had a criminal history category of I.  Guevara's advisory sentencing guidelines range, based upon a total offense level 24 and a criminal history category of I, was 51 to 63 months' imprisonment.  Pursuant to 31 U.S.C. § 5324(d)(2), Guevara faced a statutory maximum term of ten years' imprisonment.

II.

When a claim of error is preserved, this Court reviews the sufficiency of the evidence *de novo*. *United States v. Bowers*, 811 F.3d 412, 424 (11th Cir. 2016). Specifically, the Court considers "whether, under the totality of the circumstances, there is sufficient evidence to support a jury verdict when the facts are viewed in the light most favorable to the government." *Id.* (quoting *United States v. Mieres-Borges*, 919 F.2d 652, 658 (11th Cir. 1990)); *see also United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. July 10, 2017) ("When considering claims regarding sufficiency of the evidence, we view the evidence in the light most favorable to the government."). "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Bowers*, 811 F.3d at 424 (quoting *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009)).

"The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and 'no distinction is to be made between the weight given to either direct or circumstantial evidence.'" *Mieres-Borges*, 919 F.2d at 656-57 (quoting *United States v. Gonzales*, 719 F.2d 1516, 1521 (11th Cir. 1983)). "It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Garcia*, 447 F.3d 1327, 1334 (11th Cir. 2006)

10

(quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)).

This Court "[will not] reverse a conviction for insufficiency of the evidence unless [it] conclude[s] that no reasonable factfinder could find proof of guilt beyond a reasonable doubt." *Mieres-Borges*, 919 F.2d at 656.

A.

The Bank Secrecy Act makes it illegal to knowingly and intentionally "cause or attempt to cause a nonfinancial trade or business to file a report required under section 5331 or any regulation prescribed under such section that contains a material omission or misstatement of fact." 31 U.S.C. § 5324(b)(2). The elements of this offense require the Government to prove that (1) the defendant had knowledge of the currency transaction reporting requirements, (2) the defendant knowingly caused or attempted to cause the non-financial trade or business to file a report that contained a material omission or misstatement of fact, and (3) the purpose of causing or attempting to cause the non-financial trade or business to file a report that contained a material omission or misstatement of fact was for the defendant to evade the currency transaction reporting requirement of 31 U.S.C. § 5331, and the regulations promulgated thereunder. *See United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005).

Guevara takes issue with only the Government's proof regarding the second element. Specifically, Guevara argues that the evidence was insufficient to show

11

that he caused or attempted to cause the false filings because there was no evidence that he ever tried to persuade, influence, coax, encourage, convince, threaten, or even request that Sanfer file Form 8300s containing misstatements regarding Guevara's identity as the buyer of the vehicles.  However, Guevara cites no authority suggesting that such evidence is necessary to sustain a conviction under 31 U.S.C. § 5324(b)(2), and the parties agree that "cause" means "[t]o bring about or effect."  Black's Law Dictionary (10th ed. 2014); *see* Appellee's Br. 23; Appellant's Reply Br. 4 ("[T]he Defendant joins in the definition of 'cause' put forth by the Government in its brief, to wit: '[t]he term "cause" means to bring about or into existence, to make happen.  *See* Black's Law Dictionary.'").

The Government identifies numerous propositions established by circumstantial evidence at trial, including that Guevara selected, negotiated, and paid for each of the vehicles; Guevara knew, at least following the purchase of the Camaro from the Miami Lakes Auto Mall, that, as a result of each cash purchase, a Form 8300 had to be completed; Guevara solicited E.Q. to act as a straw buyer; the Form 8300s should have identified Guevara's roles in the transactions, as provider of the currency and as the person on whose behalf the transactions were occurring; and, the Form 8300s, like the title paperwork, falsely identified E.Q. as the provider of the currency and did not identify Guevara as the person on whose behalf the transactions were occurring.  *See* Appellee's Br. 26-28.  Based on this

12

evidence, the Government argues that a jury could reasonably conclude that Guevara caused or attempted to cause Sanfer to file the Form 8300s containing material misstatements as to the identity of the true purchaser of the cars, in violation of 31 U.S.C. § 5324(b)(2).

We agree with the Government.  The evidence established that Boza informed Guevara of the Form 8300 requirement when Guevara purchased a Camaro for cash at the Miami Lakes Auto Mall in February.  Accordingly, a reasonable factfinder could conclude that Guevara knew, prior to purchasing the Ferrari, Lamborghini, and Rolls Royce from Sanfer for cash,[6] that Sanfer would have to file a Form 8300 for each of those vehicles.[7]  Armed with this knowledge, Guevara recruited and paid E.Q. to act as the straw buyer for the vehicles. Guevara's use of a straw man facilitated the filing of the Form 8300s containing material misstatements by suggesting to Sanfer that E.Q., not Guevara, was the buyer who should be listed on the Form 8300s—and, ultimately, the Form 8300s

---

[6] The purchases of these vehicles took place, respectively, in March 2013, April 2013, and September 2013.  Only Guevara's purchase of the Porsche from Sanfer preceded the purchase of the Camaro from the Miami Lakes Auto Mall.

[7] We agree with the Government's observation that the "not guilty" verdict on Count 1— related to Guevara's purchase of the Porsche from Sanfer, which was the only purchase from Sanfer that took place *prior to* his purchase of the Camaro from the Miami Lakes Auto Mall— tends to suggest that the jury inferred the element of knowledge from Guevara's conversation with Boza. *See supra* n.6; Appellee's Br. 25 ("The jury's split verdict demonstrates that the jury was convinced beyond a reasonable doubt, at least after the purchase of the Camaro from a different dealership, that Guevara was aware that purchasing a vehicle with at least $10,000 in cash would trigger reporting obligations, specifically those created in 31 U.S.C. § 5324(b)(2), and necessitate the filing of a Form 8300." ).

13

pertaining to each vehicle were materially false because they listed E.Q., not Guevara, as the true buyer.  Finally, the income reconstruction evidence indicated that Guevara purposely sought to evade the currency transaction reporting requirement of 31 U.S.C. § 5331, lest the filing of such reports lead to an investigation of the income he was not reporting on his tax returns.  Viewing this evidence in the light most favorable to the Government and drawing all reasonable inferences in favor of the verdict, we cannot conclude that "no reasonable factfinder could find proof of guilt beyond a reasonable doubt."  *See Mieres-Borges*, 919 F.2d at 656.

## B.

Guevara argues separately that the evidence was insufficient to support his conviction specifically on the basis that the Government was required to submit into evidence the original Form 8300s, or certified copies thereof.

Ordinarily, we review a district court's evidentiary rulings for an abuse of discretion.  *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).  If a defendant fails to preserve an evidentiary ruling by contemporaneous objection, however, then this Court reviews "only for plain error."  *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).  "To demonstrate plain error, the defendant must show that there is '(1) error, (2) that is plain and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its

14

discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 1276 (quoting *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003)).

Guevara faults the Government for choosing not to offer into evidence either the original Form 8300s or certified copies thereof, despite having both in its possession. He contends that the best evidence rule required submission of the original or copied 8300 forms to prove their contents—*i.e.*, that they contained material omissions or misstatements of fact.

The best evidence rule, codified as Federal Rule of Evidence 1002, requires the production of originals to prove the content of any writing, recording or photograph. Fed. R. Evid. 1002; *United States v. Howard*, 953 F.2d 610, 612 n.1 (11th Cir. 1992) (per curiam). "The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." *United States v. Ross*, 33 F.3d 1507, 1513 (11th Cir. 1994). An original is not required if it is lost or destroyed, unless it has become unavailable through bad faith. Fed. R. Evid. 1004.

Because Guevara did not object during trial to the admission of Exhibit 1, the five computer-generated summaries of the relevant Form 8300s submitted by Sanfer to the IRS, the issue is being raised for the first time on appeal, and we therefore review for plain error only. *See United States v. Deverso*, 518 F.3d 1250,

15

1255 (11th Cir. 2008) (reviewing admission of evidence for plain error where objection to authenticity made at trial was different from objection proffered on appeal).

On the merits, we agree with Guevara that the Government failed to satisfy the best evidence rule by failing to introduce the original Form 8300s under Federal Rule of Evidence 1002 to prove that each Form 8300 contained "a material omission or misstatement of fact." 31 U.S.C. § 5324(b)(2). The content of the Form 8300s relevant to the charges in this case are the portions of these forms identifying E.Q., rather than Guevara, as the purchaser of the cars. Because the Government sought to prove this content for purposes of establishing "material . . . misstatement[s] of fact" under 31 U.S.C. § 5324(b)(2), the Form 8300s, or duplicates thereof,[8] should have been introduced into evidence.[9]

Notwithstanding this error, Guevara has failed to show that the admission of Exhibit 1 affected his "substantial rights," or that any error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Turner*, 474 F.3d

---

[8] A duplicate is admissible to the same extent as an original, unless there is a genuine question of authenticity or it would be unfair to admit the duplicate. Fed. R. Evid. 1003.

[9] We note additionally that Exhibit 1 is not a public or business record, but rather a computer-generated summary of certain transactions. Insofar as this summary does not pertain to voluminous records subject to Federal Rule of Evidence 1006 and was prepared specifically for purposes of litigation, the decision to admit it was error. *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183-84 (11th Cir. 2006) ("Rule 803(6) requires that both the underlying records and the report summarizing those records be prepared and maintained for business purposes in the ordinary course of business and not for purposes of litigation." (citing *United States v. Kim*, 595 F.2d 755, 760-64 (D.C. Cir. 1979))).

16

at 1275-76 (quoting *Monroe*, 353 F.3d at 1349). Even without any evidence whatsoever that a Form 8300 containing the material misstatement of fact alleged by the Government was *actually* filed, Guevara still could have been convicted of *attempting* to cause a false Form 8300 to be filed. That is, even if the Government had not shown at all—through Exhibit 1 or otherwise—that filed Form 8300s actually listed E.Q. as the buyer rather than Guevara, a jury could reasonably conclude that Guevara structured the transactions using a straw buyer for the purpose of keeping his name off the Form 8300s.[10] For these reasons, we maintain that the evidence was sufficient to sustain Guevara's convictions, even despite the Government's failure to satisfy the best evidence rule.

## C.

Having found the evidence sufficient to uphold the jury's verdict finding Guevara guilty of the offense described in 31 U.S.C. § 5324(b)(2), we next consider Guevara's argument that the district court erred in applying a two-level sentencing enhancement for obstruction of justice.

"When considering a district court's imposition of an enhancement for obstruction of justice," this Court "review[s] the district court's factual findings for clear error and the application of the factual findings to the sentencing guidelines

---

[10] Guevara concedes, albeit in a different section of his brief, that "to prove that a defendant *attempted to cause*" a non-financial trade or business to file a report that contains a material omission or misstatement of fact, "the Government *would not* be required to introduce evidence that the nonfinancial trade or business did in-fact [sic] file such a report." Appellant's Br. 33.

17

*de novo*." *United States v. Perkins*, 787 F.3d 1329, 1341 (11th Cir. 2015). "Unless it is harmless, an error in the district court's calculation of the applicable guideline range warrants reversal." *Id.* (citing *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009)). "A calculation error is harmless when a district judge clearly states that she would impose the same sentence regardless of the enhancement, and the sentence imposed is reasonable." *Id.* (citing *United States v. Keene*, 470 F.3d 1347, 1349-50 (11th Cir. 2006)).

Pursuant to U.S.S.G. § 3C1.1, a defendant's offense level will be increased by two levels if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. The enhancement may apply to conduct that occurred prior to the start of the investigation for the prosecuted offense only if the conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.* cmt. (n.1).

"Section 3C1.1 contains a clear *mens rea* requirement of *willfully* obstructing or attempting to obstruct the administration of justice." *United States v. Burton*, 933 F.2d 916, 918 (11th Cir. 1991) (per curiam). Generally, this Court

18

requires an explanation by the district court as to why it has applied the obstruction of justice enhancement:

> In order to permit meaningful appellate review, when a district court applies the obstruction enhancement because a defendant made false statements, not under oath, to law enforcement officers, it must find that the statements were false and material. It must also explain how the statements significantly obstructed or impeded the investigation or prosecution of the offense.

*United States v. Alpert*, 28 F.3d 1104, 1107 (11th Cir. 1994) (en banc); *see also United States v. Banks*, 347 F.3d 1266, 1269 (11th Cir. 2003) (explaining that, "if the district court ch[ooses] to apply the § 3C1.1 enhancement, 'it should note specifically what each defendant did, why that conduct warrants the enhancement, and, if applicable, how that conduct actually hindered the investigation or prosecution of the offense'" (quoting *Alpert*, 28 F.3d at 1107-08)).  Nevertheless, if the record "clearly reflects the basis for the enhancement and supports it," then individualized findings regarding the obstruction of justice enhancement are not necessary.  *United States v. Taylor*, 88 F.3d 938, 944 (11th Cir. 1996).

We have difficulty reviewing the application of the § 3C1.1 enhancement in this case because the district court failed to make and explain factual findings as to how Guevara obstructed or impeded the investigation or prosecution.  *See Alpert*, 28 F.3d at 1107; *see also Banks*, 347 F.3d at 1269 ("[W]e cannot proceed with appellate review of this sentence until after findings are made by the sentencing court in the language of § 3C1.1 and in accordance with *Alpert*.").  The district

19

court in this case made nothing more than vague, equivocal statements regarding Guevara's tax returns, use of a straw buyer to commit the crime with which he was charged, and initial misstatements to agents during the interview outside of his home.

We may overlook the lack of supportive factual findings and nevertheless affirm the imposition of the § 3C1.1 enhancement only if the record "clearly reflects the basis for the enhancement and supports it." *See Taylor*, 88 F.3d at 944. This record does not, however, clearly reflect how Guevara's behavior in regard to his tax returns, use of a straw buyer to commit the crime, or initial misstatements (not under oath) to agents interviewing him outside of his home were calculated to—let alone actually did—thwart the investigation or prosecution.

The district court's imposition of the two-level enhancement for obstructing justice seems to have hinged primarily on Guevara's handling of his tax returns, many of which were filed several years before the offense conduct took place:

> [T]he other matter that was referred to at the end, it may be under this category of this two points that that should be considered; and that is the fact that he failed to file tax returns when he obviously had a lavish income or access to a lavish income, a very substantial income. And the fact that at the same time he was cheating the program that provides money for people who can't eat, who don't have enough money to eat on, is outrageous.

> So whether that is within this range of obstruction of justice—so that would militate in favor of leaving the two points in.

20

Sentencing Tr. at 26:15-25.  The district court never explained how Guevara's "outrageous" behavior in regard to his tax returns impeded the investigation or prosecution, but instead concluded only vaguely that "the obstruction of justice, when factoring in [Guevara's] conduct and his tax returns and some of these others, warrants that two points.  So the objection is overruled to that."  *Id.* at 29:7-11.

We agree with Guevara that it cannot be the case both that Guevara's motive for wanting Sanfer to file Form 8300s containing false information was to hide income he did not report on his tax returns, and also that Guevara's motive for hiding income by not reporting it on his tax returns was to impede any potential future prosecution he might face for wanting Sanfer to file Form 8300s containing false information.  *See* Appellant's Br.  55-56.  Although it may have been reprehensible or even illegal for Guevara to claim low income tax credits, it cannot be said that that behavior was necessarily "purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction,"  U.S.S.G. § 3C1.1 cmt. (n.1)—particularly given that Guevara did not commit the offense until years later.

Further, the record does not clearly reflect why the district court believed Guevara's use of a straw man to buy sports cars warranted an enhancement for obstruction of justice.  Guevara's use of a straw buyer was certainly part of his

21

offense conduct and constitutes circumstantial evidence strongly supporting an inference that he knowingly caused or attempted to cause Sanfer to file false Form 8300s in violation of 31 U.S.C. § 5324(b)(2).  *See supra* discussion II.A.  But the use of deception as part of committing a crime is not itself grounds for application of the § 3C1.1 enhancement, and the record does not clearly reflect how Guevara's use of a straw buyer satisfies the § 3C1.1 "*mens rea* requirement of *willfully* obstructing or attempting to obstruct the administration of justice."  *Burton*, 933 F.2d at 918.

Finally, although making a false statement to law enforcement officers may warrant application of the § 3C1.1 enhancement under certain circumstances,[11] application of the enhancement on this ground is appropriate only if "such conduct *actually* resulted in a significant hindrance to the investigation or prosecution." *Alpert*, 28 F.3d at 1107 (emphasis added) (quoting U.S.S.G. § 3C1.1 cmt. n.5(a)); *see also United States v. Shriver*, 967 F.2d 572, 575 (11th Cir. 1992) (finding, in a case where "the record reflect[ed] that [the defendant] made a false statement, not under oath, to a law enforcement officer," an enhancement under U.S.S.G. § 3C1.1 was not warranted because "[n]o evidence in the record show[ed] that [the defendant's] false statement 'significantly obstructed or impeded the official

---

[11] One example of conduct deemed "obstructive" under § 3C1.1 is "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the [offense of conviction]."  U.S.S.G. § 3C1.1 cmt. (n.4(G)).  "Material" statements are those that, "if believed, would tend to influence or affect the issue under determination."  *Id.* cmt. n.6.

investigation.'" (quoting U.S.S.G. § 3C1.1 cmt. n.3(g))). Here, rather than identifying any actual hindrance—significant or otherwise—the district court noted specifically that "the misstatements that were made or the outright lies that were made to the officers from time to time and then retracted and then changed and modified . . . *were no impediment at all* to the agents." Sentencing Tr. 129 at 25:3-10 (emphasis added).

In light of the foregoing, we vacate Guevara's sentence and remand with instructions for the district court to resentence Guevara. Insofar as the district court decides to apply a two-level enhancement under § 3C1.1 for obstruction of justice, the court must make and explain factual findings that support the application of that enhancement. *See Alpert*, 28 F.3d at 1108 (requiring that, "[o]n remand, if the district court applies the § 3C1.1 enhancement, it should note specifically what [the] defendant did, why that conduct warrants the enhancement, and, if applicable, how that conduct actually hindered the investigation or prosecution of the offense.").

## III.

For the foregoing reasons, the judgment of the district court with respect to Guevara's convictions is **AFFIRMED.** Guevara's sentence, however, is **VACATED**, and the case is hereby **REMANDED** for reconsideration of whether and why a two-level enhancement for obstruction of justice is warranted.

23