[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13250
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cr-00313-AKK-GMB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JARRETT DENARD BOYKINS,
a.k.a. Jarrett Denard Boykin,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 3, 2020)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

A jury convicted Jarrett Boykins of two counts of possession of methamphetamine with intent to distribute and five related gun counts, stemming from three arrests in 2017 and 2018. He now appeals his conviction on five of those counts.

Mr. Boykins raises four arguments on appeal. First, he argues that the district court plainly erred in allowing the government's expert witness to testify, in violation of Fed. R. Evid. 704(b), that he possessed the requisite intent for the crime charged. Second, he contends that the district court abused its discretion in admitting staged photographs of evidence seized during his first arrest. Third, he asserts that the district court erred in allowing a witness—who was in the car with Mr. Boykins during the first arrest—to testify that someone reached out to her and tried to persuade her to claim a gun found during that arrest. Fourth, should no error alone warrant reversal, he maintains that the errors' cumulative effect does.

For the following reasons, we affirm.

## I

In January of 2019, a federal grand jury returned a second superseding indictment charging Mr. Boykins with two counts of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); two counts of possessing a firearm in furtherance of a drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A); and three counts of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

A

The first three counts—Counts 1, 2, and 3—arose from an October 2017 arrest in Pleasant Grove, Alabama. Mr. Boykins was sitting in his car in a park with Katelyn Morgan, a woman he met via Facebook Messenger. Ms. Morgan testified at trial that she planned to buy marijuana from Mr. Boykins. She explained that Mr. Boykins showed her a gun, which he shoved under his seat as police drove up to the car to inform them that the park was closed. She testified that, as police approached the car, Mr. Boykins put "two ounces of ice"—a street term for crystal methamphetamine—in his pocket, and that he took off running after an officer started talking to them.

Police pursued Mr. Boykins into a wooded area and found him standing behind a rock in a retention pond for a small creek. A search of Mr. Boykins' person revealed $2370 in cash; a search of the pond revealed what was later determined to be 52.21 grams of methamphetamine. Police also searched the car and found a loaded handgun, an ammunition drum with a magazine and ammunition, a set of digital scales, and a box of plastic sandwich bags.

Ms. Morgan testified that, following Mr. Boykins' arrest, a third party contacted her via Facebook Messenger and asked her to claim the gun found in the

3

car.  The third party told her that if she did so, he would bail her out the same day.

Ms. Morgan said she refused the offer.

**B**

Counts 4, 6, and 7 arose from an incident in May of 2018.  Mr. Boykins was

driving the mother of two of his children, Jessica Falls, to visit her father, and police

stopped them based on an issue with the vehicle's tag registration.  The police officer

noticed a smell of marijuana coming from the car and asked them if they had any

firearms or narcotics in the vehicle.  [Both initially said no, but when they were

ordered out of the vehicle, Ms. Falls blurted out that there was a gun on the passenger

side, under the back seat.  Officers searched the car and found two bottles of liquid

codeine and a partially smoked marijuana cigarette.  In a diaper bag in the backseat

they found a loaded handgun and a plastic bag containing what appeared to be

Ecstasy tablets but what was later determined to be methamphetamine.  Police also

searched Mr. Boykins and found $1020 in cash in his pocket.

Mr. Boykins was arrested at Ms. Falls' apartment in October of 2018, and the

arrest led to a search that formed the basis of Count 5 (one of the gun charges).

Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives found in the

apartment the following items: two sets of digital scales, a revolver and various types

of ammunition, and a black trash bag containing eight clear plastic bags filled with

4

two ounces of a "crystal substance" that was tested and found not to be a controlled substance.

Mr. Boykins was convicted of all seven counts, and the district court sentenced him to 241 months in prison.

## II

We normally review "a district's courts evidentiary rulings for a clear abuse of discretion" and will reverse "only if the resulting error affected the defendant's substantial rights," *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003), i.e., if "it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Barton*, 909 F.3d 1323, 1337 (11th Cir. 2018).

"[W]hen a party raises a claim of evidentiary error for the first time on appeal, we review it for plain error only." *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). "The plain-error test has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alterations in original).

Finally, "[w]e review *de novo* the cumulative impact of multiple evidentiary errors, although some of the errors might individually be reviewed for plain error."

*United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009) (internal quotation marks and citation omitted).

### III

We address each of Mr. Boykins' arguments below.

### A

Officer John Walker, a member of the Birmingham Police Department and the Drug Task Force, testified as an expert witness for the government at trial. His direct examination included the following exchange:

> Q. "Based on your training and experience and the evidence that you reviewed in relation to the Pleasant Grove case, do you believe that the 50-plus grams or more methamphetamine was possessed with the intent to distribute it?"
>
> A. "Yes, sir, absolutely."
>
> Q. "In relation to the Homewood case, the 152 pills . . . do you believe that that quantity, in relation to the quantity that was possessed was possessed with the intent to distribute?"
>
> A. "Yes, sir."

Mr. Boykins did not object to this testimony at trial, but he now argues that it was improperly admitted in violation of Fed. R. Evid. 704(b). We therefore review for plain error.

Rule 704(b) expressly prohibits expert witnesses from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," reserving such matters

6

for "the trier of fact alone."  An expert witness can "give testimony 'that supports an obvious inference with respect to the defendant's state of mind," *United States v. Stahlman*, 934 F.3d 1199, 1220 (11th Cir. 2019), but "may not opine on the defendant's intent." *United States v. Gillis*, 938 F.3d 1181, 1194 (11th Cir. 2019).

The government appears to concede, and we agree, that this testimony by Officer Walker violated Rule 704(b) and cases like *Gillis*.  The question is whether this error satisfies the remaining prongs of plain error.  Mr. Boykins succeeds under the first two prongs of plain error: The district court committed an error, which was plain, by allowing Officer Walker to testify that Mr. Boykins intended to distribute methamphetamine.

To satisfy the third prong, Mr. Boykins must establish that the error affected his substantial rights—that it "affected the outcome of the district court proceedings such that, absent the error, there is a reasonable probability of a different result." *United States v. Hernandez*, 906 F.3d 1367, 1370 (11th Cir. 2018) (internal quotation marks and citation omitted).

Even absent the error, there was ample evidence supporting a finding that Mr. Boykins had the requisite intent to commit the drug crimes charged.  In unchallenged testimony, Officer Walker testified that the 52 grams of methamphetamine found in the Pleasant Grove pond was a quantity consistent with that which would be possessed by a "mid-level drug distributor";  he also testified about the significance

7

of the digital scales found in the car and in the apartment, as well as the significance of the tablets found during the Homewood arrest. Another witness, a police officer involved in the Pleasant Grove arrest, testified about the significance of the digital scales and the cash found on Mr. Boykins. A DEA agent offered unchallenged testimony about drug distribution, including the significance of the individual bags of a non-controlled substance found in the apartment (it is a way for those who sell drugs to make a profit). Messages obtained from Mr. Boykins' phone demonstrated his involvement in narcotics, and Ms. Morgan testified that Mr. Boykins had offered to sell her marijuana immediately prior to his Pleasant Grove arrest. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1224 (11th Cir. 1993) ("evidence of prior drug dealings . . . his highly probative of intent in later charges of conspiracy and distribution of a controlled substance").

This is not a case where, without the challenged testimony, "there would not have been sufficient evidence to convict" Mr. Boykins "on any of the counts against him." *United States v. Hawkins*, 934 F.3d 1251, 1267 (11th Cir. 2019). Nor is it a case in which "[t]here can be no doubt that" the "improper testimony affected the outcome of the trial." *Id.* Officer Walker's improper testimony "was not essential to the jury's verdict," *United States v. Emmanuel*, 565 F.3d 1324, 1336 (11th Cir. 2009), and the plain error thus did not violate Mr. Boykins' substantial rights. As a result, we need not reach the fourth prong of plain-error review.

**B**

The government offered into evidence photographs of all the items the police found in the car the night of the Pleasant Grove arrest (the gun, magazine, ammunition, and digital scales) grouped together, along with the methamphetamine recovered from the pond and the cash found on Mr. Boykins. Mr. Boykins argues that these photographs should have been excluded under Fed. R. Evid. 403 because their prejudicial effect outweighs their minimal probative value. Mr. Boykins objected in the district court, so we review for abuse of discretion.

Under Rule 403, "district court[s] [may] exclude otherwise relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice'" "or needlessly presenting cumulative evidence." *Dodds*, 347 F.3d at 897. Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). But "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance . . . should be struck in favor of admissibility." *Dodds*, 347 F.3d at 897. (alteration in original and quotation marks omitted).

Mr. Boykins argues that the photos of the evidence were cumulative and provided no information that the jury did not already have, because the officers on the scene had testified about each item they found and had provided photographs of

9

each piece of evidence. The physical evidence was also admitted at trial. The proximity between the methamphetamine and the gun in the staged photographs, Mr. Boykins argues, was especially prejudicial with respect to the § 924(c) charge. The government counters that the district court gave the jury a limiting instruction regarding the photos immediately following their admission, in which it told jurors that "this is not how the evidence was found in the car"; that the items were "grouped . . . together, I guess for photography purposes"; and that "they were not all found in the same condition as depicted in these photographs."

A district court's limiting instruction to a jury "can diminish any unfair prejudice caused by the evidence's admission." *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011). To be sure, there was some overlap between the staged photographs and the other evidence previously admitted. But "Rule 403 does not mandate exclusion merely because some overlap exists between the photographs and other evidence." *United States v. De Parias*, 805 F.2d 1447, 1454 (11th Cir. 1986). The jury was properly instructed about the staged photographs, and the police witness testified on cross-examination that the items were not all found together. The district court therefore did not abuse its discretion in allowing the government to show the jury the staged photographs.

**C**

Mr. Boykins argues that the district court abused its discretion in allowing Ms. Morgan, who was in the car with him prior to the Pleasant Grove arrest, to testify about Facebook messages she received that attempted to convince her to claim the gun police seized from the car. These statements, he says, were inadmissible hearsay and violated the best evidence rule.

Both parties suggest that the standard of review for the hearsay issue is abuse of discretion. We set out some of the procedural background to determine the appropriate standard.

Mr. Boykins filed a motion in limine seeking to exclude the Facebook messages between Ms. Morgan and the sender, Hikeem Griggs, on the theory that the messages were inadmissible hearsay. At the hearing on the motion, the government indicated that it planned to call Ms. Morgan to the stand first, and said it would "simply ask [her], 'Did you have communications with an individual on Facebook related to Mr. Boykins?'" The government said it would then call Mr. Griggs to the stand to ask him about the text messages he sent to Ms. Morgan. The district court ruled from the bench as follows:

> I will allow you when Ms. Morgan is on the stand to inquire as to if she was contacted at all about his case. The text messages will not come in through her. And then you will put on Mr. Griggs and, assuming he admits that Mr. Boykins is the one who directed him to contact Ms. Morgan and instructed him to make these statements, then we'll have a sidebar. Either way, we'll talk about this issue before the exhibits come in.

11

After the trial started, defense counsel indicated to the district court that it would object to Ms. Morgan testifying about the content of the Facebook messages. The court replied:

> She received messages from an individual who purported to be calling her or getting in touch with her at the defendant's direction. And then he's going to go into, 'Allegedly the person said that they wanted you to claim ownership to this gun.' Allegedly. Again, I mean, it is not anything that's connected to the defendant . . . at this point. It's just a representation from the person who made the contact that he's doing so.

Defense counsel replied, "Okay. I see what Your Honor's doing."

Ms. Morgan was called to testify, and the government asked her on redirect examination if she was "contacted by Facebook by an individual that allegedly had contact with Mr. Boykins." Ms. Morgan testified that she had a conversation with that individual, who asked her to "do something for Mr. Boykins"—specifically, "[t]ake his gun charge." According to Ms. Morgan, the individual said that he would secure her release from custody in exchange for her claiming the gun. Ms. Morgan said she declined the offer; she testified further that she did not know the individual and nor did she know anything about his connection to Mr. Boykins. Defense counsel did not object once during this exchange.

Mr. Griggs was not called to testify after he disclosed to the government his intent to assert his Fifth Amendment privilege against self-incrimination. After relaying this to the district court, the government then said (at the close of the

business day) that it would seek to admit the Facebook messages under Fed. R. Evid. 807, because Mr. Griggs was an unavailable witness. The district court deferred arguments on the matter to the next day—but those arguments either never happened or happened outside the presence of a court reporter, because they are not in the record. The messages were never admitted.

Preserving a claim for appeal requires more than "tepid objections," *United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019), and defense counsel initially made more than tepid objections. But counsel may have relinquished those objections once Ms. Morgan took the witness stand. After initially expressing concern about her testifying as to the content of the Facebook messages, "counsel neither persisted in objecting nor moved to strike any of [Ms. Morgan's] problematic testimony when it was given." *Id*. "The plain error standard thus applies." *Id*.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted and is inadmissible unless the statement falls within an exception or exclusion provided by the Federal Rules of Evidence." *United States v. Docampo*, 573 F.3d 1091, 1096 (11th Cir. 2009) (internal quotation marks omitted). In *Docampo*, a witness testified about a threatening phone call that the defendant had made to the witness' girlfriend; the girlfriend—like Mr. Griggs in this case—did not testify. *Id.* We held in *Docampo* that the testimony was inadmissible hearsay. *Id*. at 1096-1097.

The government contends that "[t]he significant part of Ms. Morgan's testimony—a request that she 'take' the gun charge—is not itself an assertion that can be either true or false" because "that issue can be judged based on Ms. Morgan's credibility." We are not persuaded by this argument; the significant part of the testimony is instead that Mr. Griggs "allegedly had contact with Mr. Boykins," and that he was asking Ms. Morgan to do something on Mr. Boykins' behalf. "[T]he government did not lay a foundation that" Mr. Griggs "was acting as" Mr. Boykins' "agent or that" Mr. Boykins "authorized the statement." *Docampo*, 573 F.3d at 1097. This portion of Ms. Morgan's testimony was inadmissible hearsay. It was offered for the truth of the matter asserted, none of the hearsay exceptions applies, and the district court plainly erred in admitting it.

But this error did not violate Mr. Boykins' substantial rights under the third prong of plain-error review. "The admission of hearsay alone does not mandate a reversal of conviction: '[t]o require a new trial . . . [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury.'" *Docampo*, 573 F.3d at 1097 (alterations in original). Even without the testimony about the Facebook messages, there was sufficient evidence to support a finding that the gun belonged to Mr. Boykins. Ms. Morgan, for example, testified that Mr. Boykins had showed her the gun immediately before police arrived. The car Mr.

14

Boykins was driving belonged to the mother of his children, Ms. Falls, who testified that there were no guns, drugs, ammunition, or digital scales in the vehicle when she loaned it to him. There was also sufficient evidence to support the possession of methamphetamine charge and the §924(c) charge arising from the Pleasant Grove arrest. Ms. Morgan testified that Mr. Boykins had the drugs on him when he fled from police, and the drugs were found in the nearby pond where he was arrested.

Mr. Boykins also argues that Ms. Morgan's testimony violated the best evidence rule. "The best evidence rule, codified as Federal Rule of Evidence 1002, requires the production of originals to prove the content of any writing, recording or photograph." *United States v. Guevara*, 894 F.3d 1301, 1309 (11th Cir. 2018). The standard of review here is plain error, which applies to best evidence issues first raised on appeal. *Id.* at 1310.

The authenticity of the messages is not in question, and we therefore do not find that the district court plainly erred in allowing Ms. Morgan to testify about her Facebook conversation with Mr. Griggs. The messages were not offered to prove that Mr. Griggs would in fact bail Ms. Morgan out if she took responsibility for the gun. "Since the proffered testimony was offered not to prove the content of [the messages], but rather, the content of the conversations, the best evidence rule does not apply, and [Ms. Morgan's] testimonial recollection of the conversation was properly admitted." *United States v. Howard*, 953 F.2d 610, 612 (11th Cir. 1992).

15

## D

"We review the record *de novo* to determine the aggregate effect of any errors." *United States v. Cooper*, 926 F.3d 718, 739 (11th Cir. 2019). "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error—courts look to see whether the defendant's substantial rights were affected." *United States v. Capers*, 708 F.3d 1286, 1299 (11th Cir. 2013). "We assess cumulative-error claims by 'first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial.'" *United States v. Green*, 969 F.3d 1194, 1209 (11th Cir. 2020). Cumulative error requires more than a single error, "[b]ut if overwhelming evidence supports the jury's verdict such that any errors had no 'substantial influence' on the verdict, then even multiple errors can be rendered harmless." *Id.*

In the portion of his brief arguing cumulative error, Mr. Boykins focuses solely on the cumulative effect of the improper expert testimony and the staged photographs; he does not appear to have incorporated his arguments regarding the Facebook messages into his cumulative-error claim. We did not find any error with respect to the staged photographs, and we cannot find cumulative error based only on the improper expert testimony—a single error that itself we found to be harmless.

16

Even if we are to consider the district court's error in admitting Ms. Morgan's hearsay testimony as part of Mr. Boykins' cumulative-error claim, we still conclude there is no reversible error based solely on this error and the improper expert testimony. As discussed in detail above, "overwhelming evidence supports the jury's verdict." *Green*, 969 F.3d at 1209. Even combined, these two errors "had no 'substantial influence' on the verdict" and can thus "be rendered harmless." *Id*. (citations omitted).

## IV

We affirm Mr. Boykins' convictions.

**AFFIRMED.**