[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10751

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MAIKEL BRUZON PEDROSO,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20317-JEM-2

————————————————

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Maikel Bruzon Pedroso appeals his sentence of 125 months' imprisonment for Hobbs Act robbery and brandishing a firearm during and in relation to a crime of violence. Mr. Pedroso argues that the district court erred in applying a two-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for the use of physical restraint. He also asserts that the district court erred in applying a two-level sentencing enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. Finally, he contends that the application of the obstruction of justice enhancement amounts to impermissible double counting when the relevant threats were already part of the essential conduct of the Hobbs Act robbery.

**I**

On May 13, 2023, Mr. Pedroso, along with three others, robbed an individual ("S.M.") of two watches. Mr. Pedroso and two others were recruited (for pay) by Mr. Pedroso's nephew to steal the watches. The nephew told S.M to meet him at an apartment in Miami to purchase the watches, but Mr. Pedroso and the others were waiting for him armed with handguns. S.M. was forced into the apartment at gunpoint.

After removing both watches from his wrists, Mr. Pedroso and the others proceeded to force S.M. to sit on the floor at gunpoint. Mr. Pedroso then took S.M's phone and car keys to look for more valuables. Upon Mr. Pedroso's return to the apartment, he

told S.M. they knew where he lived and then placed S.M's car keys in the bathroom. Mr. Pedroso told S.M. to count to twenty before leaving the apartment, giving him and his co-defendants time to flee. In fear for his safety, S.M. did not report the robbery until the following day.

Mr. Pedroso and his co-defendants were later arrested in Tampa. The arresting officers located one of S.M.'s stolen watches. The officers also found a video of S.M. being held at gunpoint on the floor during the robbery.

## II

We first address Mr. Pedroso's argument that application of the physical restraint enhancement under U.S.S.G. § 2B3.1(b)(4)(B) was improper. When reviewing sentences for guideline calculation errors we consider factual findings for clear error and the application of governing principles to those facts *de novo*. *See United States v. Ware*, 69 F.4th 830, 854 (11th Cir. 2023).

In *Ware*, we upheld the application of the physical-restraint enhancement when the defendant threatened to kill a store customer if she did not get on the floor; grabbed an employee by the neck and pointed a gun at her head while moving her to the store counter; and forced an employee down the hall of the establishment at gunpoint in separate robberies. *See id.* at 855. We concluded that the enhancement applied where a victim was physically restrained by being tied, bound, or locked up, but was not limited to only those situations. *See id.* at 854. We noted that our precedent "clearly indicates that when an armed robber uses the threat of

deadly force with his firearm to compel a victim to move or to stay in place, the enhancement applies." *Id.*

A year after *Ware*, we reaffirmed its core holding. In a case where the robber pointed a gun at the cashier and demanded money, allowing the cashier no alternative but to comply and impeding any flight. *See United States v. Deleon*, 116 F.4th 1260, 1264 (11th Cir. 2024). We held in *Deleon* that the physical-restraint enhancement applies where a defendant physically restrains his victims if his conduct ensures their compliance and effectively prevents them from leaving a location. *See id.* at 1263-64. We concluded that a verbal threat of violence was not necessary to physically restrain a victim if the defendant's conduct communicated the threat. *See id.* at 1263.

Mr. Pedroso's conduct constituted a physical restraint of S.M. under the § 2B3.1(b)(4)(B) and our binding precedent in *Ware* and *Deleon*. Not only did Mr. Pedroso and his co-defendants force S.M. to sit and remain on the floor, but Mr. Pedroso threatened S.M. by telling him he knew where he lived and made him count to twenty while he made his own getaway. These comments, ordered at gunpoint, effectively created a circumstance where S.M. had no alternative but to comply. Moreover, it is immaterial that S.M. was forced to sit on the floor in the same room and was not moved to another location. *See United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013) (finding no requirement for the defendant to have physically moved the victim for application of the physical restraint enhancement).

Mr. Pedroso argues that the district court misapplied *Ware* because the robbery in that case is distinguishable from the facts of his case. We disagree; in *Ware* we concluded that "when an armed robber uses the threat of deadly force with his firearm to compel a victim to move or to stay in place, the enhancement applies." *Ware*, 69 F.4th at 855. That is exactly what happened here.

We are bound by *Ware* and *Deleon*. Mr. Pedroso's conduct both aided the commission of the robbery and facilitated the escape of Mr. Pedroso and his co-defendants, justifying the application of the § 2B3.1(b)(4)(B) physical restraint enhancement. The district court's application of the enhancement is affirmed.

### III

We next move to Mr. Pedroso's argument that the obstruction of justice enhancement under U.S.S.G. § 3C1.1 was improperly applied. When reviewing a district court's application of an enhancement for obstruction of justice, we review the district court's factual findings for clear error and the application of the factual findings to the Sentencing Guidelines *de novo*. *See United States v. Guevara*, 894 F.3d 1301, 1311 (11th Cir. 2018). However, when a defendant fails to raise an argument before the district court, we review only for plain error. *See United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012).

A defendant's offense level is increased by two levels if (1) he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to an investigation, prosecution, or sentencing of his instant offense; and (2) his

obstructive conduct related to his offense of conviction and any relevant conduct or a closely related offense. *See* § 3C1.1. The enhancement may apply to conduct that occurred prior to the start of the investigation for the prosecuted offense only if the conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.*, comment. (n.1).

Generally, "if the district court ch[ooses] to apply the § 3C1.1 enhancement, 'it should note specifically what each defendant did, why that conduct warrants the enhancement, and, if applicable, how that conduct actually hindered the investigation or prosecution of the offense." *Guevara*, 894 F.3d at 1311 (quotation marks omitted). Nevertheless, if "the district court did not make individualized findings regarding the obstruction of justice enhancement, the record clearly reflects the basis for the enhancement and supports it; a remand is not necessary." *United States v. Taylor*, 88 F.3d 938, 944 (11th Cir. 1996). Moreover, we have previously recognized that there is no need for a district court to make specific findings where it both adopts a presentence investigation report ("PSI") that contains specific findings, and the defendant fails to request that the court make more specific findings. *See United States v. Wayerski*, 624 F.3d 1342, 1352 (11th Cir. 2010).

The district court properly applied the two-level sentencing enhancement for obstruction of justice. Mr. Pedroso argues that the district court erred in relying on the commentary to § 3C1.1 in applying the obstruction enhancement and that it failed to adequately explain the enhancement. But these arguments are raised

for the first time on appeal, and therefore, we review them only for plain error. *See Johnson*, 694 F.3d at 1195.  Under plain error review, we may correct an error where the defendant demonstrates that (1) an error occurred; (2) the error was plain; (3) the error affected substantial rights. If the defendant satisfies these three elements, we may correct the error if it seriously affected the fairness, integrity or public reputation of judicial proceedings. *See Rosales-Mireles v. United States*, 585 U.S. 129, 134-35 (2018).

There was no plain error by the district court in relying on the commentary.  The court did not use the commentary to § 3C1.1 to expand its interpretation of the guideline provision.  Instead, application note 4(K) merely provides an example of what is already plainly stated in § 3C1.1. Mr. Pedroso telling S.M. he knew where he lived before demanding he perform a countdown while Mr. Pedroso and his co-defendants fled the scene constitutes an obstruction under § 3C1.1 because it was "purposefully calculated, and likely, to thwart the investigation or prosecution of" the robbery they had just committed.

There was also no plain error in the district court's explanation of the obstruction enhancement.  The court was not required to make individualized findings of the obstruction of justice enhancement given that the record clearly reflected the basis for the enhancement and the court adopted the PSI.  This is particularly so where, as here, Mr. Pedroso failed to request the court make a more specific finding. *Taylor*, 88 F.3d at 944; *Wayerski*, 624 F.3d at 1352.  The factual proffer from the guilty plea and undisputed

statements in the PSI support a finding that Mr. Pedroso threatened the victim by telling him he knew where he lived in an attempt to stop the victim from reporting the crime. Additional findings were not required.

Mr. Pedroso also contends that his conduct was not obstructive because there was no evidence that he or his co-defendants threatened S.M. not to report the crime. We disagree. Mr. Pedroso threatened S.M. by telling him he knew where he lived before forcing him to perform a countdown while he and his co-defendants fled. These statements constituted an implied threat, and had no purpose other than to intimidate S.M. into not calling law enforcement. That S.M. understood these threats is evident from his compliance and hesitancy to report the robbery until the next day. The record of this case sufficiently reflects the basis for the justifiable application of an obstruction of justice enhancement.

## IV

Finally, we address Mr. Pedroso's contention of impermissible double counting. Mr. Pedroso argues that applying the obstruction of justice enhancement amounts to impermissible double counting in his case because any threats were already a part of the Hobbs Act robbery. We review claims of double counting *de novo*. *See United States v. Aimufua*, 935 F.2d 1199, 1200 (11th Cir. 1991).

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Dudley*, 463 F.3d 1221, 1226-27 (11th Cir. 2006) (quotation marks omitted).  Here, however, the harm addressed by the Hobbs Act robbery, i.e., the taking of the property by threatened force, and the harm addressed by the obstruction of justice enhancement, i.e., discouraging the reporting of the completed Hobbs Act robbery, are "conceptually distinct from" each other. *See id.* at 1227.  As a result, no impermissible double counting occurred.

## V

Mr. Pedroso's sentence is affirmed.

**AFFIRMED**.